# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>December 3, 2014</u>

**NO. 32,929**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**RICHARD SCHAUBLIN,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Teddy L. Hartley, District Judge**

Gary K. King, Attorney General
Paula E. Ganz, Assistant Attorney General
Santa Fe, NM

for Appellee

Trace L. Rabern
Santa Fe, NM

for Appellant

**OPINION**

**SUTIN, Judge.**

{1}     A jury found Defendant Richard Schaublin guilty of one count of child solicitation by electronic communication device (and appearing for a meeting with) a child between thirteen and sixteen years of age, contrary to NMSA 1978, Section 30-37-3.2(A), (C)(1) (2007).  The district court entered a judgment and sentence consistent with the jury's verdict, from which Defendant now appeals.  On appeal, Defendant primarily argues that he was unlawfully entrapped by a police sting operation in which an adult police officer posed as a fifteen-year-old female child on an adults-only section of the website "Craigslist[.]"  He also raises a jury instruction issue and a challenge to the constitutionality of Section 30-37-3.2 on First Amendment grounds.

{2}     We hold that Defendant was not unlawfully entrapped, either as a matter of law or as a matter of fact.  We do not consider Defendant's unpreserved jury instruction argument, and because Section 30-37-3.2 was held constitutional on First Amendment grounds in an Opinion issued by this Court in 2011, we do not reconsider the issue here.  We affirm.

**BACKGROUND**

{3} Phil Caroland, an agent of the Curry County Sheriff's Office, posted an ad on the Craigslist website under the "women seeking men" section that was titled "New in town/looking—w4m (Clovis)" and that read, "Young/cute if age doesn't matter hit me up!!!" Defendant replied to the post stating, "Hey newbie, were[1] in the same boat. Wanna hang out?" Agent Caroland responded as "Myrna Gonzales" (Myrna) and stated, "sure asl[2]? description? im 15 f moved here from florida, very short and skinny[.]" Defendant responded by stating, "I see. What exactley are you looking for? Not sure that we could be anymore than text buddies because of your age." When Myrna responded, "thats cool . . . i like textin new ppl . . . thats how we did it in florida[,]" and after a brief e-mail discussion in which Myrna revealed that she had recently moved to New Mexico with her parents who were in the Air Force, Defendant asked for Myrna's phone number so that they could exchange text messages.

{4} Defendant initiated a text-message conversation with Myrna later that afternoon. In the interim, "Myrna" had gone to lunch with her "mom," and Defendant

---

[1] Quoted material from Craigslist postings, emails, and text messages are verbatim throughout this Opinion, with the exception of punctuation as noted.

[2] "Asl" is an acronym for "age, sex, location."

2

asked Myrna, "what does mom think of your search for a man?" When Myrna said that her mom didn't know "or she would kill me[,]" Defendant responded "Oooh! Your being a bad little girl? Did you get many [responses]?" As their conversation continued, Myrna and Defendant both made repeated references to her age, with Myrna also making references to her parents, and with Defendant asking Myrna why she was not in school (with Myrna responding that her mom had given her "a day or to to chill").

{5}    Within their first day of texting, Defendant began including sexual innuendo in his communication with Myrna, asking her "Does your 'fun' involve things 15 yr old girls shouldn't be doing yet?"; telling her, "I can hear your dirty little mind working!"; and, asking, albeit not in response to "thoughts" shared by Myrna, "What are you going to do with all of those dirty little thoughts?" The next morning, Defendant initiated a conversation with Myrna asking, "Sleep in bad girl?" and whether she had "[s]weet dreams or did dirty thoughts keep you up?" Myrna responded that she had slept "well[.]"

{6}    In their second day of communication, in response to Defendant's request for a photograph from Myrna, Agent Caroland sent two "age regressed" photographs of an adult deputy intended to appear to be photos of a fifteen-year-old girl. Having received the photographs, Defendant sent Myrna a text stating, "WOW! Its a good

3

think your not 21. You look older in [one of the photos,]" to which Myrna responded, "I tried too & thank u[.]" Shortly thereafter, Defendant told Myrna, "You are very pretty! Now i feel like a dirty old man!" Defendant then asked for Myrna to call him on the telephone. In response to this request, an adult, female deputy had a "short conversation" (as characterized by Defendant) with Defendant over the phone. Defendant followed the phone conversation with a text to Myrna stating, "Ok this is going to sound bad but you have THE sexiest voice! . . . Makes me want to throw my morals out the window!"

{7}    On the third day of their interaction, Defendant initiated a text communication with Myrna, in which Defendant initiated a discussion containing sexual innuendo, and Defendant eventually sent sexually explicit communications detailing what he "would" do to/with Myrna. On the fourth day of their interaction, Defendant initiated a text communication with Myrna with the greeting, "Goodmorning Lover!" and later that day he introduced the topic of meeting Myrna in person. Defendant and Myrna arranged to meet at Myrna's house when her parents were out. Defendant was arrested when he arrived at the address that Myrna had given him.

{8}    Prior to trial, Defendant moved for dismissal of the charge against him on the basis of illegal entrapment. As will be discussed in greater detail in the body of this Opinion, the district court denied the motion, in part, but allowed Defendant to

4

present his entrapment defense to the jury. The jury rejected Defendant's entrapment defense, and as noted earlier, found him guilty of one count of child solicitation by electronic communication device.

{9} On appeal, Defendant re-asserts his entrapment arguments, claiming that the district court erred in denying his motion to dismiss on the ground that he was subjectively entrapped as a matter of law, and also arguing that the State failed to provide sufficient evidence to support the jury's rejection of his entrapment defense as a matter of law. We disagree with both of Defendant's arguments. Defendant's additional arguments, concerning jury instructions and the constitutionality of Section 30-37-3.2 do not warrant this Court's consideration.

**DISCUSSION**

**Overview of Entrapment Law**

{10} New Mexico recognizes two major approaches to the defense of entrapment, the subjective approach and the objective approach. *See State v. Vallejos*, 1997-NMSC-040, ¶¶ 5-6, 123 N.M. 739, 945 P.2d 957 (noting that New Mexico recognizes both subjective and objective entrapment); 2 Wayne R. LaFave et al., Criminal Procedure §§ 5.2, 5.2(a) (3d ed. 2007) (stating that the subjective and objective approaches are the two major approaches to the defense of entrapment). Both are at issue here.

{11} "Subjective entrapment occurs when the criminal design originates with the [police], and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order" to generate a prosecution. *Vallejos*, 1997-NMSC-040, ¶ 5 (internal quotation marks and citation omitted). In the subjective approach, the focus is on the defendant's intent or predisposition to commit the crime, with the prosecution bearing the burden of proving to the fact-finder that the defendant was predisposed to commit the crime. *See id.*; *State v. Fiechter*, 1976-NMSC-006, ¶¶ 10 n.6, 11, 89 N.M. 74, 547 P.2d 557 (recognizing that it is the prosecution's burden to demonstrate, as a matter of fact to be resolved by the jury, "that the defendant was already willing to commit the crime"). Where the prosecution proves that the defendant was predisposed to commit the crime and the police merely provided an opportunity for him to do so, the subjective entrapment defense must fail. *Vallejos*, 1997-NMSC-040, ¶ 5.

{12} Under rare circumstances, the issue of subjective entrapment may be resolved as a matter of law, in which instance, the fact-finder would not consider the defendant's predisposition. *See Fiechter*, 1976-NMSC-006, ¶ 11 ("[I]t is rare indeed when [subjective] entrapment may correctly be held to exist as a matter of law. And if entrapment in law is not present, then the jury must decide whether the defendant was predisposed to commit the crime."); *see, e.g.*, *Sherman v. United States*, 356 U.S.

6

369, 373 (1958) (holding, pursuant to the subjective approach, that the defendant was entrapped as a matter of law); *Sorrells v. United States*, 287 U.S. 435, 441, 448-49 (1932) (same); *see* LaFave, *supra*, § 5.2(a) (recognizing that the subjective approach is also called the *Sherman-Sorrells* doctrine because it was adopted by a majority of the Supreme Court in those cases).

{13} "The objective approach focuses upon the inducements used by the" police. LaFave, *supra*, § 5.2(b). A defendant may succeed in his objective entrapment defense in one of two ways, a "factual inquiry" or a "normative inquiry." *Vallejos*, 1997-NMSC-040, ¶¶ 11, 14-15. In a factual inquiry, a jury must consider whether "as a matter of fact . . . police conduct created a substantial risk that [a hypothetical] ordinary person not predisposed to commit a particular crime would have been caused to commit that crime[.]" *Id.* ¶¶ 11-12. A defendant's predisposition "plays no role whatsoever" in the factual inquiry; and the prosecution bears the burden of proving that the police did not "exceed[] the bounds of permissible law enforcement conduct." *Id.* ¶ 13; UJI 14-5161 NMRA.

{14} In a normative inquiry, the district court may rule "as a matter of law [and policy] that police conduct exceeded the standards of proper investigation[.]" *Vallejos*, 1997-NMSC-040, ¶¶ 11, 15-16. In conducting a normative inquiry, the district court considers "whether police tactics offend our notions of fundamental

7

fairness, or are so outrageous" that they offend principles of due process, or violate "principles of fair and honorable administration of justice[.]" *Id.* ¶¶ 16-17 (internal quotation marks and citation omitted). A defendant's predisposition may, but does not necessarily, factor into a court's normative inquiry. *See id.* ¶ 15 (stating, for example, that where police persuade a recovering drug addict to use illegal drugs, the defendant's predisposition toward drug abuse may factor into the normative inquiry because, in that circumstance, the police conduct may exceed the standards of proper investigation, notwithstanding the notion that an "ordinary person" would not be susceptible to such persuasion).

**The District Court's Entrapment Ruling**

{15} The district court considered whether Defendant was entrapped pursuant to any of the foregoing standards. Through his pleadings and argument, Defendant persuaded the district court that the issue of subjective entrapment and factual-inquiry objective entrapment should be presented to and resolved by the jury. In regard to normative-inquiry objective entrapment, the district court found that the police, posing as a female, Myrna, created a profile online through which Defendant contacted Myrna who told Defendant that she was fifteen years old. Defendant and Myrna "engaged in email, text[,] and telephone conversations[,]" some of which communications "were sexual in nature." "Ultimately, . . . Defendant arrived at a

8

residence to meet [Myrna] in person[,]" and he was arrested. The district court concluded that "the police conduct followed a well[-]established manner of investigation into these types of crimes" and "neither the methods [n]or purposes of police conduct offend . . . notions of fundamental fairness." Accordingly, the district court ruled that, pursuant to a normative inquiry, objective entrapment did not occur.

**Defendant's Entrapment Argument**

{16}     Defendant does not challenge the district court's ruling regarding objective entrapment, nor does he challenge the sufficiency of the State's evidence to prove that the police "did not exceed the bounds of permissible law enforcement conduct" required to support the jury's rejection of his objective entrapment defense. *See* UJI 14-5161. Instead, Defendant's entrapment argument focuses on the "predisposition" element of subjective entrapment. In that regard, Defendant argues that, pursuant to *Sherman* and *Sorrells*, he was entrapped as a matter of law and that the State failed to present sufficient evidence that he was predisposed to sexually converse with or meet a fifteen-year-old.

**Standard of Review**

{17}     To the extent that Defendant challenges the district court's denial of his motion to dismiss on the basis of subjective entrapment pursuant to *Sherman* and *Sorrells* as an issue distinct from whether sufficient evidence supported the jury's rejection of his

9

subjective entrapment defense, we consider the single issue on appeal to be whether the jury's verdict was supported by sufficient evidence. *See State v. Myers*, 2009-NMSC-016, ¶ 14, 146 N.M. 128, 207 P.3d 1105 ("[W]hen a case proceeds to trial, error resulting from an improperly denied pretrial motion is not reversible for the result becomes merged in the subsequent trial." (internal quotation marks and citation omitted)). In reviewing Defendant's argument regarding the sufficiency of the State's predisposition evidence, we view the evidence in the light most favorable to the guilty verdict to determine whether it was supported by substantial evidence. *State v. Nichols*, 2014-NMCA-040, ¶ 15, 321 P.3d 937, *cert. granted*, 2014-NMCERT-003, 324 P.3d 376. In so doing, we do not re-weigh the facts, substitute our judgment for that of the jury, or search for inferences supporting a contrary verdict. *State v. Slade*, 2014-NMCA-088, ¶ 13, 331 P.3d 930, *cert. granted*, 2014-NMCERT-008, 334 P.3d 425.

### *Sherman* **and** *Sorrells* **Are Not Supportive of Defendant's Argument**

{18}    Defendant relies on the statement in *Sherman* that "[e]ntrapment occurs only when the criminal conduct was 'the product of the creative activity' of law[]enforcement officials" for the proposition that, but for the creative activity of the police in this case, he would not have solicited a sexual relationship with a child. 356 U.S. at 372 (quoting *Sorrells*, 287 U.S. at 451). The particular creative police activity

by which Defendant claims to have been induced was the officer's use of an adult-only Craigslist board to post Myrna's ad, the officer's act of directing Myrna's interaction with Defendant "toward the sexual," and the officer's act of using an adult woman's photograph and voice to accompany the "Myrna" persona. Defendant argues that the foregoing police conduct "was designed to plant a seed" in Defendant's mind that would "germinate into a plan" that, once carried out, would create an opportunity to prosecute a crime. *Cf. Sherman*, 356 U.S. at 372 (recognizing that entrapment may be indicated where "the criminal design originates with the [police], and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute" (internal quotation marks and citation omitted)).

{19} In both *Sherman* and *Sorrells*, the United States Supreme Court recognized that police may detect criminals by means of a ruse. *See Sherman*, 356 U.S. at 372 (recognizing that "[c]riminal activity is such that stealth and strategy are necessary weapons in the arsenal of the police officer"); *Sorrells*, 287 U.S. at 441 ("Artifice and stratagem may be employed to catch those engaged in criminal enterprises."). It is only where, acting under the cover of such ruse, the police (or government agent) persuades an otherwise law abiding citizen to engage in criminal activity through repeated and consistent appeals, that the line is crossed between setting a "trap for the

11

unwary criminal" and impermissible entrapment of the "unwary innocent." *Sherman*, 356 U.S. at 372-74 (holding that the defendant was unlawfully entrapped by a government agent who sought to persuade the defendant to obtain narcotics by making repeated requests, first to overcome the defendant's refusal, then his evasiveness, and then his hesitancy before finally achieving capitulation); *see Sorrells*, 287 U.S. at 441 (holding that the government agent lured the defendant, otherwise not predisposed, to engage in criminal activity by "repeated and persistent solicitation in which he succeeded by taking advantage of the [defendant's] sentiment"); *see also United States v. Vasco*, 564 F.3d 12, 18 (1st Cir. 2009) (recognizing that government overreach may be demonstrated by "such conduct as intimidation, threats, dogged insistence, excessive pressure[,] or exploitation of a noncriminal motive").

{20}    Defendant's reliance on *Sherman* and *Sorrells* is unpersuasive under the circumstances of this case. Notwithstanding the fact that Myrna's ad was posted in the adults-only section of Craigslist[3], Myrna informed Defendant immediately, in her

---

[3]    Defendant does not appeal the district court's conclusion that the "well-established" police investigation technique of posting "Myrna's" ad to the adults-only section of Craigslist was within the bounds of fundamental fairness, thereby effectively conceding  the correctness of the district court's ruling. *See* Rule 12-213(A)(4) NMRA (stating that a finding that the appellant does not attack in his brief in chief "shall be deemed conclusive").

12

response to Defendant's initial response to her ad, that she was fifteen years old. The record of Defendant's ensuing e-mail and text exchange with Myrna is void of any indication that police attempted to persuade Defendant, through even a single request, to continue communicating with Myrna. Further, Defendant's contention that it was Myrna, instead of Defendant, who inserted sexuality into their communications is contradicted by the record, which reflects that the subject of sexuality was first broached by Defendant in the following text exchange.

Defendant: What you be doing right now if you could?

Myrna: Not sure something fun & not have to worry bout.

Defendant: There you go with that fun thing again. Does your 'fun' involve things 15 yr old girls shouldn't be doing yet?

Myrna: Hmmmmm I'm shy lol

Defendant: What does that mean?

. . . .

Defendant: I've got a pretty good idea just by where you posted[.]

Myrna: Hehehe is that bad?

Defendant: I found you didn't i? Guess were both bad!

Myrna: Hehehe guess so . . . . Now wat?

Defendant: I can hear your dirty little mind working!

*See United States v. Brand*, 467 F.3d 179, 195 (2d Cir. 2006) (holding that the jury could have interpreted the defendant's "use of sexual innuendo [in his online communications with an undercover agent posing as a thirteen-year-old child] as 'oblique requests' of enticement to engage in sexual activity"). Also contrary to Defendant's representation, the foregoing exchange occurred before police sent any photographs to Defendant and before Myrna phoned Defendant. Later text messages, including those that were exchanged after Defendant received the photographs and telephone call, contained increasingly graphic sexual language that was consistently introduced by Defendant, but none reflect any repeated or persistent attempt by police to persuade Defendant to communicate with Myrna, sexually or otherwise.

{21}    In sum, from the foregoing, the jury could reasonably have concluded that Defendant engaged with Myrna willingly and without having been persuaded to do so by any manner of persistent or insistent cajoling by the police. Accordingly, the circumstances here do not bear reasonable comparison to the circumstances of *Sherman* and *Sorrells*, nor do we read *Sherman* or *Sorrells* to support reversal of the jury's verdict in this case.

**Evidence of Defendant's Predisposition Was Sufficient**

{22}    Defendant's overarching argument regarding his predisposition is that there was "no evidence to support the conclusion that, absent the insertion of the fake

14

persona into his life, [he] would ever [have] exchanged sexual texts with a juvenile." He argues that had he been presented with an "ordinary opportunity" to respond to an ad that was "clearly . . . for a fifteen-year-old" there was no evidence that he would have done so. And he contends that he was, in fact, responding to the "improper lure" or "special inducement" by the police that commenced with the adults-only section of the Craigslist posting and was followed by photos and telephone communication with an adult woman, all of which led him to be "suspicious that [Myrna] was an adult role-playing a minor."

{23}    Where the police offer an "ordinary opportunity" to commit a crime, that is, an opportunity that is free of police inducement and overreach and the defendant avails himself of the opportunity, an entrapment defense will not succeed. *See Jacobson v. United States*, 503 U.S. 540, 550 (1992) ("Had the agents in this case simply offered petitioner the opportunity to order child pornography through the mails, and petitioner . . . had promptly availed himself of this criminal opportunity, it is unlikely that his entrapment defense would have warranted a jury instruction."); *United States v. Gendron*, 18 F.3d 955, 961-62 (1st Cir. 1994) (stating that an "ordinary opportunity" is one that is not characterized by police inducement and overreaching). Examples of improper inducement or overreaching include: (1) the use of "intimidation and threats against a defendant's family," (2) calling every day and

threatening and acting belligerent toward the defendant, (3) engaging "in forceful solicitation and dogged insistence until [the defendant] capitulated," (4) playing upon the defendant's sympathy or sentiment, (5) using "repeated suggestions which succeeded only when [the] defendant had lost his job and needed money for his family's food and rent," and (6) an agent presenting herself as "suicidal and in desperate need of money[.]" *Id.* (internal quotation marks and citations omitted).

{24}    In this case, the police presented an opportunity, via Myrna's Craigslist posting and her immediate representation of herself as a fifteen-year-old child, for Defendant to commit a crime. This did not constitute an improper overreach by the police. *See Gendron*, 18 F.3d at 961 ("It is proper (i.e., not an 'inducement') for the government to use a 'sting,' at least where it amounts to providing a defendant with an 'opportunity' to commit a crime."); *see also State v. Sorto-Enamorado*, 544 Fed. Appx. 298, 300 (5th Cir. 2013) (holding that the defendant was not entitled to an entrapment defense where he "pushed for a 'hook up' " with an undercover police officer who responded to the defendant's Craigslist ad and told him that she was only fifteen years old). Defendant availed himself of the opportunity presented by the police when he continued to communicate with Myrna even after having learned her age and when he introduced sexuality into the communications. The police only continued the ruse of presenting Myrna as a fifteen year old that was seeking a

relationship. The record does not reflect that the police used any improper overreaching or inducement in order to persuade Defendant to engage in these activities.

**{25}** Further, although Defendant argues that, based on the police's use of an adult to portray Myrna in photos and over the telephone, he believed that Myrna was an adult playing the role of a child, the jury was not persuaded by this representation, and we will not second guess its determination. *See Sorto-Enamorado*, 544 Fed. Appx. at 300 (holding that it was irrelevant to the question of the defendant's predisposition that a photograph purportedly of a fifteen-year-old child "could be thought to be an older girl" because the photo was accompanied by an age disclosure); *see also Slade*, 2014-NMCA-088, ¶ 13 (stating that we will not substitute our judgment for that of the jury). Nor are we persuaded that Defendant's testimony in that regard was "uncontradicted." To the contrary, viewing the evidence in the light most favorable to the State, the record reflects that Defendant believed that Myrna was a fifteen-year-old child, even after he saw her photo and heard her voice. For example, having seen the photo, Defendant sent an e-mail to Myrna stating, in part:

> So, as you know, I answered the [Craigslist] ad. Much to my surprise, you reply and tell me your 15! My first reaction was to slam my computer shut and throw it out the window like someone from 20/20 was filming my reaction to your age. Obviously I didn't do that because

here we are now, 80 something texts and a phone call later. Now, tonight Im laying here in bed with the little angel on one shoulder and the little devil on the other. The funny thing is, the little devil is this VERY pretty, inisent looking girl . . . . She keeps telling me that these thoughts Im having are ok and thats what she wants but is too shy to say it. So now Im in this pickle and know what I should do but would REALLY, REALLY, REALLY like to do what I shouldnt!!!!!

Later on the same day that Defendant sent the foregoing e-mail, he initiated and carried out a sexually explicit text conversation with Myrna, but only after inquiring whether she had ever experienced sex, because he "[d]idnt want to offend [her] with [his] dirty thoughts." From the foregoing, the jury could reasonably have concluded that Defendant believed that Myrna was actually a fifteen-year-old child, thereby rejecting his claim to the contrary. *See State v. Dominguez*, 2014-NMCA-064, ¶ 28, 327 P.3d 1092 (noting that "[c]ontrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject the defendant's version of the facts" (alteration, internal quotation marks and citation omitted)), *cert. denied*, 2014-NMCERT-005, 326 P.3d 111.

{26} In sum, Defendant's willingness to engage in sexually explicit conversations with Myrna, which was not the product of police overreach or improper inducement, was sufficient evidence of his predisposition to commit the crime of child solicitation by electronic device to support the jury's rejection of his subjective entrapment defense. Defendant's argument provides no basis for reversal.

**Defendant's Remaining Arguments**

{27}     Defendant argues that an instruction given to the jury in this case providing that: "[i]t is not a defense to the crime of [c]hild [s]olicitation by [e]lectronic [c]ommunication [d]evice that the intended victim of . . . [D]efendant was a peace officer posing as a child under sixteen[,]" was improper for a number of reasons. Defendant did not object to the instruction in the district court, nor, regarding that instruction or the statutory language from which it derived, did he make the arguments below that he now makes on appeal. Because Defendant's arguments in this regard were not preserved in the district court, we decline to consider them. *See* Rule 12-213(A)(4) (requiring the appellant to include a statement explaining how the issue was preserved below, including citations to the record demonstrating preservation); *State v. Lucero*, 1999-NMCA-102, ¶ 45, 127 N.M. 672, 986 P.2d 468 (declining to address an argument where the appellant failed to comply with the preservation requirement of Rule 12-213).

{28}     Finally, we do not consider Defendant's argument that Section 30-37-3.2 is unconstitutional because it criminalizes speech that is protected under the First Amendment to the United States Constitution. In contravention of Rule 12-213(A)(4), Defendant fails to demonstrate whether and, if so, how he preserved his constitutional argument in the district court. More importantly, this issue was

resolved in *State v. Ebert*, a case that Defendant has failed to recognize in his briefing, and we will not re-consider it. *See* 2011-NMCA-098, ¶¶ 1, 7-14, 150 N.M. 576, 263 P.3d 918 (rejecting a challenge to Section 30-37-3.2 on the grounds of First Amendment overbreadth, among other constitutional arguments); *see also* Rule 12-213(A)(4) (requiring an appellant, in his brief in chief, to cite applicable New Mexico decisions).

**CONCLUSION**

{29}    We affirm the district court's judgment and sentence.

{30}    **IT IS SO ORDERED.**


_____

**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**


_____

**TIMOTHY L. GARCIA, Judge**


_____

**M. MONICA ZAMORA, Judge**