**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2016-NMCA-002**

**Filing Date:  August 31, 2015**

**Docket No. 33,506**

**STATE OF NEW MEXICO,**

     **Plaintiff-Appellee,**

**v.**

**JACOB MENDOZA,**

     **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Donna J. Mowrer, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Elizabeth Ashton, Assistant Attorney General
Albuquerque, NM

for Appellee

Todd B. Hotchkiss, Attorney at Law, LLC
Todd B. Hotchkiss
Albuquerque, NM

for Appellant

**OPINION**

**SUTIN, Judge.**

**{1}**     A jury found Defendant guilty of one count of child solicitation by electronic device contrary to NMSA 1978, Section 30-37-3.2 (A), (B)(1) (2007). As grounds for reversal, Defendant argues that he was entrapped, that the State destroyed evidence thereby depriving him of due process, and that he was deprived of his constitutional right to a speedy trial. We hold that Defendant's arguments do not demonstrate any ground for reversal, and we affirm.

1

**BACKGROUND**

**{2}**　In *State v. Schaublin*, 2015-NMCA-024, ¶ 3, 344 P.3d 1074, *cert. denied*, 2015-NMCERT-002, 346 P.3d 370, we discussed an advertisement placed in the Craiglist website by Agent Phil Caroland of the Curry County Sheriff's office. This case involves the same Craigslist ad as discussed in *Schaublin*, by Agent Caroland posing as "Myrna Gonzales," a fifteen-year-old girl. *Id.* After engaging in a sexually explicit e-mail discussion with Myrna, Defendant arranged to meet her in person. When Defendant appeared for the meeting, he was arrested. He was later charged with one count of child solicitation. Additional facts are provided as necessary in our discussion.

**{3}**　Prior to trial, Defendant sought dismissal of the child solicitation charge on the ground that he was subjectively and objectively entrapped as a matter of law. Defendant also sought dismissal on the ground that the State had destroyed evidence and on the ground that he was deprived of his right to a speedy trial. On appeal, Defendant seeks reversal of his conviction on the three grounds argued in the district court as bases for dismissal.

**{4}**　We hold that Defendant was not entrapped as a matter of law under either a subjective or objective analysis. We also hold that Defendant's destruction of evidence and speedy trial arguments do not demonstrate grounds for reversal. We affirm.

**DISCUSSION**

**{5}**　"New Mexico recognizes two major approaches to the defense of entrapment, the subjective approach and the objective approach." *Id.* ¶ 10. Subjective entrapment, which focuses on the defendant's predisposition, is normally resolved by a fact-finder and is only rarely resolved as a matter of law by the court. *Id.* ¶¶ 11-12.

**{6}**　Objective entrapment, which "focuses upon the inducements used by the police[,]" is broken into two subsets, factual and normative. *Id.* ¶ 13 (internal quotation marks and citation omitted). A defendant seeking to establish objective entrapment under a factual approach would attempt to prove to a fact-finder that "as a matter of fact . . . police conduct created a substantial risk that a hypothetical ordinary person not predisposed to commit a particular crime would have been caused to commit that crime." *Id.* (omission in original) (alterations, internal quotation marks, and citation omitted). A defendant seeking to establish objective entrapment under a normative approach, that is as a matter of law, would seek a ruling by the district court that "as a matter of law and policy [the] police conduct exceeded the standards of proper investigation." *Id.* ¶ 14 (alterations, internal quotation marks, and citation omitted).

**{7}**　In the present case, the district court concluded that Defendant was not subjectively or objectively entrapped as a matter of law, but the court allowed the jury to resolve the issue whether Defendant was subjectively or objectively entrapped, as a matter of fact. The jury rejected Defendant's entrapment defenses when it found him guilty of child solicitation. On

2

appeal, Defendant seeks reversal of his conviction on the grounds that he was subjectively and objectively entrapped as a matter of law. Because Defendant challenges the court's rejection of his entrapment defense, as a matter of law, our review is de novo. *State v. Vallejos*, 1996-NMCA-086, ¶ 28, 122 N.M. 318, 924 P.2d 727, *rev'd in part on other grounds*, 1997-NMSC-040, 123 N.M. 739, 945 P.2d 957. Defendant does not challenge the jury's conclusion that he was not objectively entrapped as a matter of fact.

**Defendant's Subjective Entrapment Argument**

**{8}** "Subjective entrapment occurs when the criminal design originates with the police, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to generate a prosecution." *Schaublin*, 2015-NMCA-024, ¶ 11 (alteration, internal quotation marks, and citation omitted). It is permissible for police to set a trap for the unwary criminal by means of a ruse. *Id.* ¶ 19. The line between the permissible use of a ruse and impermissible entrapment is drawn at the point where the police "persuade[] an otherwise law abiding citizen to engage in criminal activity through repeated and consistent appeals[.]" *Id.* "[E]ntrapment as a matter of law exists only when there is undisputed testimony which shows conclusively and unmistakably that an otherwise innocent person was induced to commit the act." *United States v. Dozal-Bencomo*, 952 F.2d 1246, 1249-50 (10th Cir. 1991) (internal quotation marks and citation omitted); *see id.* at 1249 (stating that a court "may find entrapment as a matter of law if the evidence satisfying the essential elements of entrapment is uncontradicted" (internal quotation marks and citation omitted)). Subjective entrapment is rarely held to exist as a matter of law. *Schaublin*, 2015-NMCA-024, ¶ 12.

**{9}** To support his contention that he was subjectively entrapped as a matter of law, Defendant argues that (1) Myrna's ad was posted in a section of Craigslist that required each user to be at least eighteen years old, and therefore, it was reasonable for him to assume that any posting in that section was done by an adult; (2) he was misled by photographs of a twenty-six-year-old woman purporting to be Myrna; and (3) Myrna "pushed to set up a meeting with [him] after engaging him in [a] sexual discussion." Defendant claims that he lacked the predisposition to commit child solicitation and that, but for the foregoing circumstances by which Defendant argues the police entrapped him, he would not have engaged in such "conversations[.]"

**{10}** Defendant's argument in this regard resembles the argument made by the defendant in *Schaublin*. In *Schaublin*, the defendant argued that, because Myrna's ad was in the adults-only section of Craigslist, the officer used an age-regressed photograph of an adult woman to accompany the "Myrna" persona, and Myrna "inserted sexuality into their communications[,]" he was subjectively entrapped as a matter of law. *Id.* ¶¶ 6, 9, 12, 18-20. We held that because Myrna "informed [the d]efendant immediately, in her response to [his] initial response to her ad, that she was fifteen years old[,]" and because the record reflected that the defendant, not Myrna, first broached the topic of sexuality, "the jury could reasonably have concluded that [the d]efendant engaged with Myrna willingly and without

3

having been persuaded to do so[.]" *Id.* ¶¶ 20-21.

**{11}**     Defendant attempts to distinguish this case from *Schaublin* on the ground that the "Myrna" photos in *Schaublin* were age-regressed and that the photos in the present case depicted a twenty-six-year-old woman whose photo had not been subject to age-regression. This distinction is contradicted by the record in the present case in which Agent Caroland testified that the Myrna photographs that had been sent to Defendant had been subjected to an age-regression process by the National Center for Missing and Exploited Children and were intended to represent a pre-teen or young teenage girl. Furthermore, even were we to assume that the Myrna photographs in the present case were not age-regressed, such a fact would not "conclusively and unmistakably" demonstrate that Defendant was not predisposed to commit child solicitation such that Defendant was entitled to a ruling that, as a matter of law, he was subjectively entrapped. *See Dozal-Bencomo*, 952 F.2d 1249-50 ("[E]ntrapment as a matter of law exists only when there is undisputed testimony which shows conclusively and unmistakably that an otherwise innocent person was induced to commit the act." (internal quotation marks and citation omitted)). Here, as in *Schaublin*, in Myrna's first reply to Defendant's first e-mail to her, Myrna stated that she was "15 and going to be in 10th grade." Therefore, even if we were to agree with Defendant that the Myrna photographs had not been age-regressed, at best this would have created a circumstance in which there existed evidence supporting Defendant's argument that he believed that Myrna was an adult and evidence supporting the State's position that Defendant believed that Myrna was a fifteen-year-old child. Under these circumstances, the district court properly determined that the issue of subjective entrapment should be resolved by the jury as a matter of fact. *See Dozal-Bencomo*, 952 F.2d at 1249 (recognizing that subjective entrapment may only be found as a matter of law where the relevant facts are uncontradicted).

**{12}**     Further, although Defendant argues that Myrna "pushed" to meet him after engaging in a "sexual discussion" with him, the record reflects that Defendant initiated the sexual discussion by asking Myrna, "R u still a virgin?" and that he initiated the plan to meet by asking Myrna whether she could "get away" and by stating "I wanna see how well u can please me. I just need to find us a place[.]" The record is devoid of any evidence that Agent Caroland used repeated and consistent appeals to persuade Defendant to communicate with or meet Myrna. *See Schaublin*, 2015-NMCA-024, ¶¶ 16, 19 (stating the standard used to determine whether a defendant was subjectively entrapped includes "repeated and consistent appeals" to "persuade[] an otherwise law abiding citizen to engage in criminal activity"). In sum, under the circumstances of this case, the district court did not err in denying Defendant's motion to dismiss on the ground that he was subjectively entrapped as a matter of law. *See Dozal-Bencomo*, 952 F.2d at 1249-50 (recognizing that entrapment as a matter of law may be found where it is unmistakable "that an otherwise innocent person was induced to commit the act" (internal quotation marks and citation omitted)).

**Defendant's Objective Entrapment Argument**

**{13}**     The district court determined that the police conduct was not unconscionable, and

4

Defendant's motion to dismiss on the ground that he was objectively entrapped as a matter of law was denied. Defendant challenges the district court's denial of his motion to dismiss, reiterating that he was objectively entrapped as a matter of law.

**{14}** Objective entrapment may be held to exist as a matter of law when the district court determines that "as a matter of law [the] police conduct exceeded the standards of proper investigation[.]" *Vallejos*, 1997-NMSC-040, ¶ 11. This is distinct from the issue of objective entrapment as a matter of fact in which a jury considers whether, as a factual matter, the "police conduct created a substantial risk that an ordinary person not predisposed to commit a particular crime would have been caused to commit that crime[.]" *Id.* In his argument, Defendant conflates these distinct forms of objective entrapment and argues that he was objectively entrapped as a matter of law because the Myrna ad "created a substantial risk [that] an ordinary person would be lured into committing" child solicitation. Since Defendant expressly limits his argument on appeal to the issue of objective entrapment as a matter of law and he does not challenge the jury's verdict, we do not consider whether the jury properly concluded that, as a matter of fact, the police did not create a substantial risk that an ordinary person would be lured into committing child solicitation.

**{15}** Instead, we limit our discussion of objective entrapment to Defendant's argument, that is, whether the police were guided by an "illegitimate purpose" and that they acted unconscionably when they placed the ad in an adults-only section of Craigslist, used photographs of a twenty-six-year-old woman to depict "Myrna," and engaged Defendant in two days of conversation "attempting to bait him into a sexual discussion[.]" Before fully discussing Defendant's argument, however, we observe that, although Defendant characterizes the photographs as depicting "a [twenty-six] year old," the evidence presented at the hearing on the motion to dismiss on entrapment grounds was that the photographs were of a twenty-three-year-old deputy and that the photographs had been age-regressed to portray a pre-teen or young teenage girl. Therefore, we do not accept Defendant's characterization that the photographs portrayed a twenty-six-year-old woman.

**{16}** The issue whether the law enforcement practice of posting an ad in an adults-only section of a website and using an age-regressed photo of an adult to accompany the false persona of a fifteen-year-old child, who purportedly placed the ad, constitutes objective entrapment as a matter of law is one of first impression in New Mexico. In *Vallejos*, our Supreme Court cautioned the judiciary not to "micro-manage police investigative procedures" and stated that a determination of objective entrapment should be "reserved for only the most egregious circumstances[.]" *Id.* ¶¶ 21-22 (internal quotation marks and citation omitted). Additionally, the Supreme Court noted that objective entrapment is not indicated simply because the police participate "in a crime [that] they are investigating" or use "deception to gain the confidence of suspects[.]" *Id.* ¶ 22.

**{17}** To illustrate the distinction between a permissible "degree of deception" and impermissible "unconscionable methods" of crime detection, the *Vallejos* Court provided several examples to serve "as indicia of unconscionability." *Id.* ¶ 18. Among the examples

5

of unconscionable police methods are giving a defendant free illicit drugs until he is addicted and then playing on his addiction to persuade him to purchase illicit drugs; overcoming a defendant's demonstrated hesitancy by persistent solicitation; threatening or using violence; appealing to sympathy or friendship; offering "inordinate gain or . . . excessive profit"; "excessive involvement by the police in creating the crime"; manufacturing "a crime from whole cloth"; and acting with the "illegitimate purpose" of "ensnar[ing] a defendant solely for the purpose of generating criminal charges and without any motive to prevent further crime or protect the public at large." *Id.* ¶¶ 18-19 (internal quotation marks and citations omitted). The court then applied the foregoing standards to determine that the police methods used in *Vallejos*, specifically, law enforcement's use of illegal drugs to set up drug transactions and their use of assumed identities as drug dealers to capture potential drug buyers did not constitute objective entrapment as a matter of law because none of the indicia of unconscionability were present. *Id.* ¶¶ 3-4, 39-41.

**{18}**     In the present case, the record is void of any evidence that Agent Caroland persuaded Defendant to engage in child solicitation by any of the indicia of unconscionability discussed in *Vallejo*s. Although Defendant argues that Agent Caroland attempted "to bait him into a sexual discussion" with Myrna, as noted earlier, the subject of sex was introduced into his and Myrna's conversation by Defendant. Further, the record is void of any indication that the agent used persistent solicitation to overcome any hesitancy expressed by Defendant to engage in a sexual relationship with Myrna, attempted to appeal to Defendant's sense of sympathy or friendship, or offered Defendant any form of profit or gain.

**{19}**     Nor, under the circumstances of this case, was the act of placing an ad in the adults-only section of Craigslist an unconscionable police practice. Although the ad itself did not indicate Myrna's age, Agent Caroland represented Myrna to be a fifteen-year-old child in his first reply to Defendant's response to the ad. Thus, despite the placement of the ad in the adults-only section of Craigslist, Defendant was made aware at the outset that the ad had not been placed by an adult. Additionally, in terms of the conscionability of police practices, we see little distinction between Agent Caroland perpetuating the ruse that he was a fifteen-year-old girl who was breaking the rules of Craigslist by posting an ad in an adult-restricted section and the law enforcement practice of posing undercover as a drug dealer. *See id.* ¶ 40 (holding that in terms of the objective entrapment analysis it was not unconscionable for the police to maintain assumed identities as drug dealers). In each instance, law enforcement is playing a role and engaging in a ruse intended to root out criminals. Likewise, just as the *Vallejos* Court approved the use of actual illicit drugs in the drug sale by undercover agents posing as drug dealers, we approve the use in the present case of age-regressed photographs to accompany the Myrna persona. *See id.* To hold that it was impermissible for Agent Caroland to use the age-regressed photographs that were essentially a "prop" that permitted him to believably maintain the Myrna persona would amount to micro-management of police investigative procedures that is not within the purview of this Court. *See id.* ¶ 21 ("The evaluation of police conduct in the normative inquiry [of objective entrapment] . . . should not be used as a guise to . . . micro-manage police investigative procedures.").

**{20}** On a final note in regard to Defendant's objective entrapment argument, we observe that Section 30-37-3.2(D) expressly provides that "[in] a prosecution for child solicitation . . . it is not a defense that the intended victim of the defendant was a peace officer posing as a child under sixteen years of age." Thus, in drafting Section 30-37-3.2(D) the Legislature appears to have contemplated that the police would use methods such as Agent Caroland's "Myrna" Craigslist ad to enforce the prohibition against child solicitation. The obvious legislative intent behind Section 30-37-3.2 further supports our conclusion that the activity here did not exceed the standards of proper investigation and was not unconscionable under *Vallejos*. *See* 1997-NMSC-040, ¶ 21 (stating that the appellate court should not interfere with the policy and enforcement decisions of the legislative and executive branches of government). In sum, Defendant's argument that he was objectively entrapped as a matter of law does not demonstrate grounds for reversal.

## Defendant's Constitutional Arguments

**{21}** Defendant raises two constitutional arguments. First, Defendant argues that he was deprived of his due process right to a fair trial by virtue of the State having "failed to preserve" or having "destroyed" the electronic versions of the e-mail correspondence between him and "Myrna." Secondly, Defendant argues that his right to a speedy trial was violated. We review these constitutional issues de novo; however, we defer to the district court's underlying factual findings. *State v. Samora*, 2013-NMSC-038, ¶ 6, 307 P.3d 328 ("We review constitutional claims de novo."); *State v. Montoya*, 2011-NMCA-074, ¶ 9, 150 N.M. 415, 259 P.3d 820 (recognizing that, in a de novo review of a constitutional issue, the appellate court defers to the district court's factual findings).

## Defendant's Due Process Argument

**{22}** The district court found that Agent Caroland used a Yahoo e-mail account to communicate as "Myrna" with Defendant. Pursuant to the terms of use of the Yahoo e-mail account, the e-mails between Myrna and Defendant were automatically deleted after a period of inactivity. However, all of the e-mails between Myrna and Defendant had been printed, and the printed versions were disclosed to Defendant prior to trial.

**{23}** Without attacking the foregoing findings and without citing facts in the record, Defendant argues that Agent Caroland printed only a selection of Myrna's e-mail conversation with Defendant and discarded the rest without permitting Defendant to review it. Building on the premise that only some of the correspondence was preserved, Defendant argues that an analysis of the effect of the "destroyed" e-mails pursuant to the three-part test outlined in *State v. Chouinard* leads to a conclusion that his due process rights were violated by the alleged destruction of the e-mails. 1981-NMSC-096, ¶¶ 12, 16, 96 N.M. 658, 634 P.2d 680 (recognizing that due process requires that the prosecution make available to the defense evidentiary material in its possession and stating that "New Mexico has adopted a three-part test to determine whether deprivation of evidence is reversible error"). We disagree.

7

**{24}**    Under the three-part test outlined in *Chouinard* the deprivation of evidence constitutes reversible error where: (1) "[t]he [prosecution] either breached some duty or intentionally deprived the defendant of evidence[,]" (2) the evidence of which the defendant was deprived was material, and (3) the defendant was prejudiced by the deprivation of evidence. *Id.* ¶ 16 (internal quotation marks and citation omitted). Applying the *Chouinard* factors, the district court found and Defendant does not refute that, as to the first factor, the State did not intentionally delete the electronic version of the correspondence between Myrna and Defendant. Further, although Defendant argues on appeal that "[l]aw enforcement has a duty to preserve . . . evidence[,]" he does not argue or provide authority for the proposition that, under the circumstances of this case, the State breached its duty of preserving evidence. Here, the district court determined in an unattacked and, therefore, conclusive finding that "printed versions [of the e-mails] do exist[.]" *See* Rule 12-213(A)(4) NMRA (stating that the appellant's argument "shall set forth a specific attack on any finding, or such finding shall be deemed conclusive"). With no argument or authority to support a contrary proposition, we conclude that notwithstanding the inadvertent loss of the electronic versions of the e-mails, the State satisfied its duty of preserving the evidence by printing the e-mails. *Cf. Chouinard*, 1981-NMSC-096, ¶¶ 14, 21 (concluding that destroyed evidence did not warrant reversal where the prosecutor followed a system of preservation procedures that were reasonably assured to preserve evidence and recognizing that, in general, sanctions are not warranted where the loss of evidence is inadvertent).

**{25}**    As to the second and third *Chouinard* factors, the district court found that because printed versions were available, the electronic versions of the e-mails between Myrna and Defendant were not material, and their destruction was not prejudicial to the defense. Defendant's arguments to the contrary rest upon the unsupported assumption that the printed e-mails did not depict the full extent of the communications between him and Myrna; the arguments are not persuasive. In sum, Defendant has failed to demonstrate a due process violation or reversible error as a consequence of the electronic version of the e-mail correspondence between him and Myrna having been deleted.

**Defendant's Speedy Trial Argument**

**{26}**    Speedy trial issues are evaluated by the balancing test discussed in *State v. Garza*, 2009-NMSC-038, ¶ 13, 146 N.M. 499, 212 P.3d 387, pursuant to which we consider: "(1) the length of delay, (2) the reasons for the delay, (3) the defendant's assertion of his right, and (4) the actual prejudice to the defendant." (Internal quotation marks and citation omitted.) "[G]enerally a defendant must show particularized prejudice of the kind against which the speedy trial right is intended to protect." *Montoya*, 2011-NMCA-074, ¶ 11 (internal quotation marks and citation omitted). "If a defendant does not demonstrate prejudice, he . . . may still show violation of the speedy trial right" if the other three *Garza* factors weigh in his favor *and* he has not acquiesced in the delay. *Id.* In the present case, Defendant acquiesced in the delay and failed to demonstrate prejudice of the kind against which the speedy trial right is intended to protect; accordingly, without considering the remaining *Garza* factors, we conclude that Defendant has failed to demonstrate a violation

8

of his right to a speedy trial.

**{27}** Approximately twenty-two months passed from the time that Defendant was charged with child solicitation to the time that he was convicted. Because the district court determined and Defendant does not dispute that this was a complex case, with an according presumptive-prejudice threshold of eighteen months within which trial should commence, there was an approximate four-month delay beyond that threshold. *See Garza*, 2009-NMSC-038, ¶ 48 (stating that, in a complex case, the presumptive-prejudice threshold is eighteen months). Although Defendant asserts that he "was not responsible for any delay[,]" the record reflects that he acquiesced in or caused a significant portion of the delay. A jury trial originally scheduled to commence on March 7, 2012, was continued pursuant to a stipulated motion for a continuance; a jury trial set for February 28, 2013, was continued pursuant to Defendant's motion for a continuance; a jury trial set for April 8, 2013, was continued pursuant to a stipulated order for continuance; and a jury trial set for July 23, 2013, was also continued pursuant to a stipulated motion for a continuance. Defendant, having acquiesced in approximately sixteen of the almost twenty-two months of delay, may not now benefit from that delay by seeking dismissal on speedy trial grounds. *State v. McCroskey*, 1968-NMCA-074, ¶ 17, 79 N.M. 502, 445 P.2d 105 (stating that a defendant "cannot be heard to complain [of a deprivation of his right to a speedy trial] if he consented to or acquiesced in the delay").

**{28}** The right to a speedy trial is intended to guard against three forms of prejudice: oppressive pretrial incarceration, undue anxiety and concern of the accused, and impairment to the defense. *Garza*, 2009-NMSC-038, ¶ 35. In seeking to establish a speedy trial violation, it is incumbent upon the defendant to demonstrate and to provide evidence of a causal link between the delay and any alleged prejudice as a result of the delay. *State v. Spearman*, 2012-NMSC-023, ¶ 39, 283 P.3d 272.

**{29}** Defendant argues one source of prejudice, that is, the "disappearance" of the e-mails between Myrna and Defendant from Agent Caroland's e-mail account, which Defendant asserts occurred sometime between April 16, 2012, and July 9, 2013, a period during which Defendant acquiesced. Defendant equates the disappearance of the e-mails to the death, disappearance, or memory loss of a witness, which, as stated in *Garza*, is the "most serious" type of prejudice. 2009-NMSC-038, ¶ 36 (internal quotation marks and citation omitted). Defendant's comparison of the electronic copies of the e-mails to the absolute loss of witness testimony as a result of a witness's death, disappearance, or memory loss is unavailing.

**{30}** As discussed earlier, the district court concluded that the e-mails between Myrna and Defendant were printed and provided to Defendant before trial, and Defendant does not attack that finding. Defendant does not argue, nor could he reasonably do so under these circumstances, that his defense was impaired by the loss of the electronic version of his communications with Myrna. He has, therefore, failed to show the type of prejudice that the speedy trial right was intended to prevent.

**{31}** In sum, because Defendant acquiesced in the delay in bringing this case to trial and he has failed to demonstrate prejudice, his speedy trial argument provides no basis for reversal.

**CONCLUSION**

**{32}** We affirm.

**{33}** **IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Judge**

_____
**LINDA M. VANZI, Judge**