IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2011-NMCA-074

Filing Date: May 27, 2011

Docket No. 28,881

STATE OF NEW MEXICO,

       Plaintiff-Appellee,

v.

FREDDIE BENJI MONTOYA,

       Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY
Stephen Bridgforth, District Judge

Gary K. King, Attorney General
Anita Carlson, Assistant Attorney General
Santa Fe, NM

for Appellee

Law Office of Craig C. Kling
Craig C. Kling
San Diego, CA

for Appellant

OPINION

FRY, Judge.

{1}     Defendant appeals from convictions of kidnaping, conspiracy to commit kidnaping, second-degree criminal sexual penetration (CSP II), and aggravated burglary. He raises three points on appeal: (1) his right to a speedy trial was violated by a twenty-one-month delay between his arrest and trial; (2) he was deprived of his right to a trial by jury because a certified court interpreter was not sworn in before voir dire commenced; and (3) his right to be free from double jeopardy was violated by his convictions for kidnaping, CSP II, and aggravated burglary. We conclude that Defendant's convictions of kidnaping and CSP II

1

violate principles of double jeopardy, and we therefore remand with instructions to vacate one of Defendant's convictions. We affirm on all other issues.

## I. BACKGROUND

{2} Defendant's convictions stem from an incident that occurred on March 2, 2006, in Doña Ana County, New Mexico. At trial, Victim testified that she was driving home that evening after stopping for fuel at a gas station. Shortly after leaving the gas station, Victim observed a work truck pass her vehicle. A few minutes later, Victim testified that she stopped her vehicle on the roadway because the work truck she had observed earlier was now parked sideways across the road, blocking traffic in both directions. Victim stated that two men exited the truck and approached her vehicle. She explained that she opened her car door after the driver of the truck displayed a gun. She testified that after the truck driver gained entry to her vehicle, he proceeded to sexually assault her while the passenger of the truck held her hands above her head. After the assault, Victim stated that the men let her go, returned to the work truck, and drove away. The next day, Victim reported the incident to the police and subsequently identified Defendant as the driver of the truck.

{3} Defendant was arrested and charged with: (1) kidnaping; (2) conspiracy to commit kidnaping; (3) aggravated burglary committed with a deadly weapon or, in the alternative, committed during the commission of a battery; and (4) CSP II committed during the commission of a felony, or in the alternative, committed while being aided or abetted by another. Following a jury trial, Defendant was convicted on all charges. This appeal followed.

## II. DISCUSSION

{4} Defendant argues that his right to a speedy trial was violated, that he was denied his right to trial by jury, and that his convictions violate his right to be free from double jeopardy. We address each argument in turn.

### A. The District Court Did Not Violate Defendant's Right to a Speedy Trial

{5} Defendant argues that the delay of his trial for over twenty-one months prejudiced his defense due to the death of an alibi witness during the pretrial delay. As a result, he maintains that the delay violated his right to a speedy trial.

{6} As an initial matter, we consider Defendant's argument that our Supreme Court's decision in *State v. Garza*, 2009-NMSC-038, 146 N.M. 499, 212 P.3d 387, should not apply retroactively to his case. Defendant claims that *Garza* overturned established precedent governing speedy trial analysis and held that the burden no longer shifts to the state if pretrial delay is determined to be presumptively prejudicial. As a result, according to Defendant, this holding in *Garza* is a "new rule" enacted prior to Defendant's convictions becoming final, and it should not have retroactive effect. *See State v. Mascarenas*, 2000-NMSC-017, ¶ 24, 129 N.M. 230, 4 P.3d 1221 ("An appellate court's consideration of

whether a rule should be retroactively or prospectively applied is invoked only when the rule at issue is in fact a 'new rule.'").

{7} While Defendant correctly states the relevant holding in *Garza*, we disagree with his characterization of that holding. The Court in *Garza* sought to clarify what it perceived to be ambiguities in *Barker v. Wingo*, 407 U.S. 514 (1972), the United States Supreme Court's seminal decision concerning the right to speedy trial. *Garza*, 2009-NMSC-038, ¶ 15. The Court in *Garza* reviewed New Mexico case law and case law from federal appeals courts and stated that "[i]n light of the overwhelming consensus among the federal Circuit Courts of Appeals and our policy of providing a functional analysis based on the facts and circumstances of each case, we abolish the presumption that a defendant's right to a speedy trial has been violated based solely on the threshold determination that the length of delay is presumptively prejudicial." *Id.* ¶ 21 (internal quotation marks omitted). Although the Court used the term "abolish" in describing its holding, it nonetheless characterized its holding as "modify[ing]" New Mexico precedent on the issue. *Id.* ¶¶ 21, 22. As a result, we do not view *Garza*'s holding as a "new rule" triggering an inquiry into whether it may be applied retroactively. *See Kersey v. Hatch*, 2010-NMSC-020, ¶ 16, 148 N.M. 381, 237 P.3d 683 (explaining that "a court establishes a new rule when its decision is flatly inconsistent with the prior governing precedent and is an explicit overruling of an earlier holding" (internal quotation marks omitted)).

{8} Defendant's argument regarding the alleged retroactive application of *Garza* appears to be directed solely at *Garza*'s modification of the burden-shifting employed in prior New Mexico case law. To the extent that Defendant's argument is also directed to *Garza*'s modification of the guidelines governing the determination of presumptive prejudice, we reject the argument. The Court in *Garza* changed the existing guidelines from nine months to one year for a simple case, from twelve months to fifteen months for an intermediate case, and from fifteen months to eighteen months for a complex case. 2009-NMSC-038, ¶¶ 41, 47, 48. The Court explicitly stated that these new guidelines would apply "to speedy trial motions to dismiss initiated on or after August 13, 2007." *Id.* ¶ 50. Because Defendant filed his motion to dismiss on December 26, 2007, the new guidelines announced in *Garza* are applicable.

1. **Application of the *Barker* factors**

{9} We turn now to analysis of Defendant's argument that his speedy trial right was violated. In making this determination, we employ the balancing test created in *Barker* and weigh the conduct of both the prosecution and the defendant in light of four factors: "(1) the length of delay, (2) the reasons for the delay, (3) the defendant's assertion of his right, and (4) the actual prejudice to the defendant." *Garza*, 2009-NMSC-038, ¶ 13 (internal quotation marks omitted). In considering each of the factors, we defer to the district court's factual findings but review de novo the question of whether Defendant's constitutional right to a speedy trial was violated. *State v. Brown*, 2003-NMCA-110, ¶ 11, 134 N.M. 356, 76 P.3d 1113.

**{10}** According to *Garza*, the initial inquiry in speedy trial analysis is a determination as to whether the length of pretrial delay is "presumptively prejudicial." 2009-NMSC-038, ¶ 15. "[A] presumptively prejudicial length of delay is simply a triggering mechanism, requiring further inquiry into the *Barker* factors." *Id.* ¶ 21 (internal quotation marks omitted). In the present case, there was a delay of approximately twenty-one months between Defendant's indictment and the beginning of his trial. Although the district court made no findings regarding the complexity of the present case, twenty-one months exceeds the guideline for even the most complex case. *See id.* ¶ 48. Accordingly, inquiry into the *Barker* factors is warranted.

**{11}** *Garza* provides guidance as to the order in which we consider the factors. Our Supreme Court in *Garza* stated that "generally a defendant must show particularized prejudice of the kind against which the speedy trial right is intended to protect." 2009-NMSC-038, ¶ 39. If a defendant does not demonstrate prejudice, he or she may still show violation of the speedy trial right "if the length of delay and the reasons for the delay weigh heavily in [the] defendant's favor and [the] defendant has asserted his right and not acquiesced to the delay." *Id.* Therefore, we turn first to the fourth *Barker* factor and consider whether Defendant has demonstrated actual prejudice. *See Garza*, 2009-NMSC-038, ¶¶ 35-37 (explaining that the defendant has the burden to demonstrate and substantiate prejudice).

a.      **Prejudice Factor**

**{12}** "The United States Supreme Court has identified three interests under which we analyze prejudice to the defendant: (i) to prevent oppressive pretrial incarceration[,] (ii) to minimize anxiety and concern of the accused[,] and (iii) to limit the possibility that the defense will be impaired." *Id.* ¶ 35 (internal quotation marks omitted). "As to the first two types of prejudice, some degree of oppression and anxiety is inherent for every defendant who is jailed while awaiting trial." *Id.* (alterations omitted) (internal quotation marks omitted). "Therefore, we weigh this factor in the defendant's favor only where the pretrial incarceration or the anxiety suffered is undue." *Id.* Furthermore, "[t]he oppressive nature of the pretrial incarceration depends on the length of incarceration, whether the defendant obtained release prior to trial, and what prejudicial effects the defendant has shown as a result of the incarceration." *Id.*

**{13}** In the present case, Defendant spent only three months in jail while he negotiated the reduction of his bond. He was released a full year-and-a-half before his trial. In addition, while Defendant asserts that he "was forced to worry about the pending trial for the better part of two years," he has not demonstrated that his worry was undue. *See In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 10, 121 N.M. 562, 915 P.2d 318 ("An assertion of prejudice is not a showing of prejudice.").

**{14}** Defendant also claims he was prejudiced because one of his alibi witnesses died during the time he was awaiting trial. However, Defendant did not inform his attorney about the existence of this witness until the week before trial. In addition, Defendant concedes that he was able to present the testimony of another alibi witness and, as a result, he was not

4

deprived of an alibi defense. Moreover, Defendant failed to state what exculpatory testimony would have been offered through the alibi witness and, in turn, how the witness's absence prejudiced him. Therefore, because Defendant has not made a particularized showing of prejudice, we conclude that he has not met his burden.

{15} We now turn to the other *Barker* factors to determine whether they weigh heavily in his favor, despite his failure to demonstrate prejudice. *See Garza*, 2009-NMSC-038, ¶ 39 (explaining that the right to a speedy trial may be violated if the factors other than prejudice weigh heavily in the defendant's favor).

### b. Length of Delay

{16} The greater the delay in comparison to the complexity of the case, "the more heavily it will potentially weigh against the [s]tate." *Id.* ¶ 24. As previously noted, the district court made no findings regarding the complexity of the present case, but we conclude that it was of intermediate complexity. "Typically, simple cases require less investigation and tend to involve primarily police officer testimony during the trial." *State v. Laney*, 2003-NMCA-144, ¶ 14, 134 N.M. 648, 81 P.3d 591 (internal quotation marks omitted). "Cases of intermediate complexity, on the other hand, seem to involve numerous or relatively difficult criminal charges and evidentiary issues, numerous witnesses, expert testimony, and scientific evidence." *Id.* Here, Defendant faced four somewhat difficult charges, and there were nine witnesses, including a sexual assault nurse examiner and a forensic scientist. Accordingly, this case falls in the category of intermediate complexity, for which our Supreme Court has determined that a fifteen-month delay may be deemed presumptively prejudicial. *Garza*, 2009-NMSC-038, ¶ 48.

{17} The delay in this case was six months longer than the fifteen-month guideline. In our view, such a delay was not so long or protracted as to weigh more than slightly against the State. *See State v. Wilson*, 2010-NMCA-018, ¶ 29, 147 N.M. 706, 228 P.3d 490 (stating that delay of five months beyond the guideline for a simple case was not so extraordinary or protracted as to compel weighing the length of delay factor against the state more than slightly), *cert. denied*, 2010-NMCERT-001, 147 N.M. 673, 227 P.3d 1055.

### c. Reasons for the Delay

{18} There are three types of delay, each of which weighs differently in favor of or against the state. The delays range from a deliberate attempt to delay trial to a valid, non-negligent reason for delay. *See Barker*, 407 U.S. at 531 (noting that a "deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government," that "more neutral" delays caused by negligence or administrative problems should be weighted less heavily against the state, and that "a valid reason, such as a missing witness, should serve to justify appropriate delay") (footnote omitted).

{19} The record reflects only one motion for continuance and one petition for extension of the so-called six-month rule, both filed by the State. Our Supreme Court granted two additional extensions of the six-month rule. It appears that the majority of the delay in the

present case was due to backlog at the lab that was conducting what the State termed "DNA testing." In fact, the forensic scientist who testified for the State clarified that she tested vaginal swabs taken from Victim and items of Victim's clothing for the presence of semen and, finding no semen, she did no further testing. The scientist also testified that the evidence to be tested arrived at the lab in May and June 2006, but that she was unable to test the evidence until March 2007 due to the "very large backlog" of evidence waiting to be tested.

**{20}** We conclude that the delay attributable to the lab's backlog weighs only slightly against the State. There is no evidence and Defendant does not suggest that the State deliberately caused the backlog. *See State v. Tortolito*, 1997-NMCA-128, ¶¶ 9, 13, 124 N.M. 368, 950 P.2d 811 (weighing only slightly against the state a delay attributable to the crime lab's backlog when there was no evidence suggesting that the state was negligent or willful in the conduct of its DNA investigation).

**{21}** The reason for the remaining delay, from the completion of the lab's testing in March 2007 to the trial in December 2007, is unclear. However, it appears likely that this delay was attributable to the district court's schedule because no motions for continuance appear in the record. Accordingly, we consider this period of delay to be administrative, which we weigh only slightly against the State, given the relatively short length of time that the overall delay extended beyond the triggering guideline. *See Garza*, 2009-NMSC-038, ¶¶ 29-30 (explaining that administrative delay is negligent and weighed against the state according to the length of the delay and, where the delay extends only slightly beyond the triggering guideline, the factor weighs only slightly in the defendant's favor).

### d.    Defendant's Assertion of the Right

**{22}** In considering the third *Barker* factor, "we assess the timing of the defendant's assertion and the manner in which the right was asserted." *Garza*, 2009-NMSC-038, ¶ 32. "An early assertion of the speedy trial right indicates the defendant's desire to have the charges resolved rather than gambling that the passage of time will operate to hinder prosecution." *Zurla v. State*, 109 N.M. 640, 644, 789 P.2d 588, 592 (1990) *modified on other grounds by Garza*, 2009-NMSC-038.

**{23}** Defendant objected to only one of the State's two motions for continuance or extension. Moreover, he waited until the day before trial to affirmatively assert the right through a motion to dismiss. Thus, this factor weighs only slightly in Defendant's favor. *See Laney*, 2003-NMCA-144, ¶ 24 ("Because [the d]efendant waited until the eleventh hour to specifically and meaningfully invoke a ruling on the speedy trial issue, we find this factor weighs only slightly in his favor.").

### e.    Balancing the Factors

**{24}** In the present case, Defendant failed to demonstrate actual prejudice, and the remaining factors weigh only slightly in his favor. The delay passed the threshold for asserting the right by only a few months and was largely caused by the time it took to

complete lab testing and by administrative delay. Defendant acquiesced in part of the delay because he did not oppose the State's first motion for continuance, and he did not assert his right to a speedy trial until the day before trial began. Thus, Defendant's failure to make an affirmative showing of particularized prejudice precludes a determination that his speedy trial right was violated because the other three factors weigh only slightly against the State. Accordingly, on balance, we affirm the district court's denial of his motion to dismiss.

## B. The District Court Did Not Violate Defendant's Right to Trial by Jury

{25}    Defendant argues that he was deprived of his right to a trial by jury because a certified court interpreter who served the jury venire during voir dire was not properly sworn in. Defendant maintains that the district court abused its discretion by not granting a mistrial after defense counsel alerted the court to this fact. Defendant did not properly preserve the issue and, therefore, we decline to address it.

{26}    The trial transcript does not conclusively show whether or not the interpreter was sworn in. Although the transcript of voir dire does not reflect that the interpreter was sworn, it is possible that the oath occurred before voir dire took place. However, even if the oath did not take place before voir dire, Defendant did not draw the district court's attention to this procedural defect until after voir dire, after the petit jury had been seated, and after four witnesses had already testified. Defendant did not properly preserve the issue because he waited until after the time when the district court could have avoided or cured the error. *See Gracia v. Bittner*, 120 N.M. 191, 195, 900 P.2d 351, 355 (Ct. App. 1995) (stating that one purpose of the preservation requirement is to give the district court "an opportunity to correct the mistake"); *see also State v. Trujillo*, 119 N.M. 772, 776, 895 P.2d 672, 676 (Ct. App. 1995) (explaining that timely objections must be made in order to preserve an issue for appeal).

{27}    Moreover, even if Defendant had properly preserved the alleged error, there was no prejudice to him. Apparently the only venire person for whom the interpreter provided her services, juror no. 62, was not ultimately selected to serve on the jury.

## C. Defendant's Convictions for Both CSP II (Commission of a Felony) and Kidnaping Violated Protections Against Double Jeopardy

{28}    Defendant claims that his constitutional protection against double jeopardy was violated because he was convicted of both CSP II (commission of a felony) and the predicate felony underlying the CSP II conviction. The State offered two theories of CSP II: (1) sexual intercourse during the commission of aggravated burglary and (2) sexual intercourse during the commission of kidnaping. Defendant maintains that the conduct supporting his conviction of CSP II under either theory and the conduct supporting his convictions of aggravated burglary and/or kidnaping was unitary and not intended to be punished separately.

7

**{29}** "The right to be free from double jeopardy consists of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *State v. Rodriguez*, 2005-NMSC-019, ¶ 6, 138 N.M. 21, 116 P.3d 92 (alteration omitted) (internal quotation marks omitted). In the present case, we are concerned with the third type—multiple punishment for the same offense. This is "a question of legislative intent, which we review de novo." *State v. Franco*, 2005-NMSC-013, ¶ 5, 137 N.M. 447, 112 P.3d 1104.

**{30}** "We analyze a multiple punishment double jeopardy challenge under *Swafford v. State*, 112 N.M. 3, 810 P.2d 1223 (1991), and its progeny." *State v. Padilla*, 2006-NMCA-107, ¶ 26, 140 N.M. 333, 142 P.3d 921, *rev'd on other grounds by* 2008-NMSC-006, 143 N.M. 310, 176 P.3d 299. The protection against multiple punishments Defendant invokes in the present case is categorized as a "double-description [case], which prohibits charging a defendant with violations of multiple statutes for the same conduct in violation of the [L]egislature's intent." *State v. Armendariz*, 2006-NMCA-152, ¶ 5, 140 N.M. 712, 148 P.3d 798 (internal quotation marks omitted). In such a case, "double jeopardy bars a conviction if the conduct underlying the two offenses is unitary and the [L]egislature has not indicated an intent to punish the same conduct separately." *Padilla*, 2006-NMCA-107, ¶ 26.

### 1. Unitary Conduct

**{31}** We begin our analysis by determining whether Defendant's actions may be viewed as one, single transaction. Conduct is not unitary if sufficient "indicia of distinctness" separate the transaction into several acts. *State v. Cooper*, 1997-NMSC-058, ¶ 59, 124 N.M. 277, 949 P.2d 660 (internal quotation marks omitted). In making this determination, we evaluate separations in time and space as well as the quality and nature of the acts or the results involved. *Swafford*, 112 N.M. at 13-14, 810 P.2d at 1233-34. Sufficient indicia of distinctness exist "when one crime is completed before another," and also "when the conviction is supported by at least two distinct acts or forces, one which completes the first crime and another which is used in conjunction with the subsequent crime." *Armendariz*, 2006-NMCA-152, ¶ 7. The key consideration is whether the same force was used to commit both crimes. *Id.*

**{32}** We consider in turn whether unitary conduct supported (1) CSP II and aggravated burglary, or (2) CSP II and kidnaping.

### a. CSP II (Commission of a Felony) and Aggravated Burglary

**{33}** In order to convict Defendant of CSP II (commission of a felony), the jury had to find that Defendant "caused [Victim] to engage in sexual intercourse" and that he committed this act "during the commission of [either] kidnap[]ing or aggravated burglary." The district court gave the jury two alternative instructions on the charge of aggravated burglary. The first charge was that Defendant committed aggravated burglary by entering a vehicle without authorization "armed with a pistol while entering, leaving, or while inside the vehicle." In the alternative, the court instructed the jury that it could find Defendant guilty of aggravated

8

burglary if it found that Defendant entered the vehicle and "touched or applied force to [Victim] in a rude or angry manner while entering, leaving, or while inside the vehicle." Both Defendant and the State agree that the jury convicted Defendant on the first charge—being armed with a pistol—and not on the alternative charge. We therefore analyze unitary conduct in accordance with the first charge of aggravated burglary.

{34} The jury could convict Defendant of aggravated burglary if it found that he entered Victim's vehicle without authorization with the intent to commit criminal sexual penetration and while armed. Accordingly, the crime of aggravated burglary was completed as soon as Defendant, with the requisite intent, gained entry to Victim's vehicle while armed with a pistol. The force Defendant used to gain entry into Victim's car while armed with a pistol was distinct from the force used to restrain Victim in order to commit criminal sexual penetration. *Cf. State v. Crain*, 1997-NMCA-101, ¶ 21, 124 N.M. 84, 946 P.2d 1095 (explaining that CSP II involves "some force or restraint occurring either before or after the sexual penetration without consent"). Thus, the conduct is not unitary and the evaluation of this crime ends. *See Swafford*, 112 N.M. at 14, 810 P.2d at 1234 (explaining that if conduct is not unitary the "inquiry is at an end").

**b.      CSP II (Commission of a Felony) and Kidnaping**

{35} We turn now to Defendant's argument that convictions of both CSP II and kidnaping violated his protections against double jeopardy. Again, in order to convict Defendant of CSP II, the jury had to find that Defendant "caused [Victim] to engage in sexual intercourse" and that he committed this act "during the commission of [either] kidnap[]ing or aggravated burglary." In order to convict Defendant of kidnaping, the jury was required to find that Defendant "restrained or confined [Victim] by force or intimidation" and that he "intended to hold [Victim] against [her] will to inflict a sexual offense on [Victim]." Defendant argues that the force used to restrain or confine Victim was the same force used to cause Victim to engage in sexual intercourse and, therefore, the conduct underlying both crimes was unitary.

{36} In order to address Defendant's argument, we briefly review our case law on the matter. In a case this Court decided prior to the decision in *Swafford*, we suggested that double jeopardy principles do not preclude punishment for both CSP II (commission of a felony) and kidnaping. *See State v. Tsethlikai*, 109 N.M. 371, 374, 785 P.2d 282, 285 (Ct. App. 1989) (stating that "[b]ecause CSP II and kidnaping address different social norms," convictions of both crimes do not violate protections against double jeopardy). However, we also indicated that "special circumstances in a particular case may require merger." *Id.* Since *Swafford*'s adoption of the double-description analysis set forth in *Blockburger v. United States*, 284 U.S. 299 (1932), our case law has made it clear that a double-description analysis is appropriate only on a showing of unitary conduct. *See Armendariz*, 2006-NMCA-152, ¶ 8 (explaining that a reviewing court applies the *Blockburger* analysis to ascertain legislative intent "[i]f the conduct underlying two offenses is unitary"). Thus, the "special circumstances" alluded to in *Tsethlikai* refer to the constitutional problems that arise when a defendant is convicted and punished of two crimes based on unitary conduct. *See State v. Pisio*, 119 N.M. 252, 261, 889 P.2d 860, 869 (Ct. App. 1994) (stating that "the special circumstances to which *Tsethlikai* referred include unitary conduct").

9

**{37}**    As we have made clear in cases decided after *Swafford*, unitary conduct occurs when the state bases its theory of kidnaping on the same force used to commit CSP II (commission of a felony) even though there were alternative ways to charge the crime. *See, e.g., Crain*, 1997-NMCA-101, ¶¶ 21-22 (stating that "CSP III cannot be charged as CSP II without some force or restraint occurring either before or after the sexual penetration without consent" and that the defendant's convictions must be vacated because the court could not tell whether the jury convicted him on the theory that the kidnaping was accomplished by force or by deception); *Pisio*, 119 N.M. at 261-62, 889 P.2d at 869-70 (explaining that "force or coercion exerted prior to the act [of penetration] itself [which] will support a conviction for kidnap[]ing" and CSP II's "force or coercion executed prior to the act of sexual intercourse without consent but closely associated with it" can amount to unitary conduct).

**{38}**    In the present case, Defendant's conviction for CSP II (commission of a felony) was based on sexual intercourse "during the commission of kidnap[]ing or aggravated burglary," and his conviction for kidnaping required that he "restrained or confined" Victim with the intent to "inflict a sexual offense" on her. We said in *Crain* and *Pisio* that because some force or restraint is involved in every sexual penetration without consent, kidnaping cannot be charged out of every CSP without a showing of force or restraint separate from the CSP. *Crain*, 1997-NMCA-101, ¶ 21; *Pisio*, 119 N.M. at 261-62, 889 P.2d at 869-70. The State argues that such force or restraint exists in this case because the jury could have based the kidnaping conviction on Defendant's confining Victim by blocking the highway with his truck rather than on the force Defendant exerted in restraining Victim while committing CSP.

**{39}**    We are unable to determine from the record whether the jury found that the kidnaping was accomplished by the truck's confinement of Victim's vehicle or by Defendant's restraint of Victim inside the vehicle. The jury instruction supported either theory of kidnaping. Under such circumstances, we must "reverse a conviction if one of the alternative bases for the conviction provided in the jury instructions is legally inadequate because it violates a defendant's constitutional right to be free from double jeopardy." *State v. Foster*, 1999-NMSC-007, ¶ 2, 126 N.M. 646, 974 P.2d 140, *abrogated on other grounds by Kersey*, 2010-NMSC-020. Because one of the alternative bases for kidnaping was the force of restraining Victim and because that force was the same force used to commit CSP, we conclude that the conduct underlying both of the convictions was unitary.

## 2.    Legislative Intent

**{40}**    Having determined that the conduct was unitary, we turn to the second prong of our inquiry under a double-description analysis, which is to determine if the Legislature intended for the unitary conduct to be punished as separate offenses. The "sole limitation on multiple punishments is legislative intent." *Swafford*, 112 N.M. at 13, 810 P.2d at 1233. "If the [L]egislature expressly provides for multiple punishments, the double jeopardy inquiry must cease." *Id.* at 14, 810 P.2d at 1234. If the Legislature has not provided a clear expression of intent for multiple punishments, a court must apply the *Blockburger* test to the elements of each statue. *Swafford*, 112 N.M. at 14, 810 P.2d at 1234. If, as a result of that test, one statute is subsumed within the other, the statues are the same for double jeopardy purposes.

*Id.* If, through the *Blockburger* test, we conclude that each statute requires an element that the other does not, we will presume that the Legislature intended for the conduct to result in separately punishable offenses. *Swafford*, 112 N.M. at 14, 810 P.2d at 1234. However, this presumption is not conclusive and may be overcome by other indicia of legislative intent, such as the "language, history, and subject of the statutes." *Id.*

**{41}** In the present case, there are no clear legislative expressions indicating that multiple punishments are permissible. Thus, we turn to the *Blockburger* elements test. The *Blockburger* test "focuses strictly upon the elements of the statutes." *State v. Armendariz*, 2006-NMSC-036, ¶ 21, 140 N.M. 182, 141 P.3d 526. When applying the *Blockburger* test to offenses that may be charged in alternate ways, we focus our inquiry on the elements of the statute as they were presented in the jury instructions. *State v. Armijo*, 2005-NMCA-010, ¶ 22, 136 N.M. 723, 104 P.3d 1114 ("[W]e look only to the elements of the statute[] as charged to the jury and disregard the inapplicable statutory elements."). The jury instruction in the present case for CSP II (commission of a felony) required the jury to find that Defendant caused Victim to engage in sexual intercourse during the commission of kidnaping or aggravated burglary. The jury instruction for kidnaping required the jury to find that Defendant restrained or confined Victim by force or intimidation with the intent to hold her against her will to inflict a sexual offense on her.

**{42}** In comparing the two offenses, we consider whether each offense requires proof of an element that the other does not. *Franco*, 2005-NMSC-013, ¶ 12. Because we have already determined that the conduct in this case is unitary, the "during the commission of a felony" element of CSP II requires proof of all of the elements of kidnaping. Thus, the offense of kidnaping is subsumed in CSP II (commission of a felony), and convictions of both offenses violated Defendant's right to be free from double jeopardy. *See Armendariz*, 2006-NMCA-152, ¶ 11 (holding that aggravated burglary was subsumed within CSP II (commission of a felony) when the conduct was unitary and an element of CSP II (commission of a felony) required that the sexual contact occur in the "commission of aggravated burglary").

**{43}** This does not mean that a defendant could never be punished for both kidnaping and CSP II (commission of a felony). *See Tsethlikai*, 109 N.M. at 373-74, 785 P.2d at 284-85 (stating that convictions normally are allowed for both predicate and compound offenses and our courts have held that CSP statutes and kidnaping statutes protect different social norms). Had the jury in this case been instructed only on a theory based on non-unitary conduct to establish kidnaping—for example, the theory that Defendant kidnaped Victim by preventing her vehicle from traveling further by blocking it with his truck—convictions for both CSP II (commission of a felony) and kidnaping may have been upheld. However, in light of the unitary conduct in this case, punishment for both kidnaping and CSP II (commission of a felony) fail the *Blockburger* test and violate Defendant's right to be free from multiple punishments. Therefore, we remand to the district court with instructions to vacate the conviction for the lesser offense. *See Kersey*, 2010-NMSC-020, ¶ 12 (explaining that if double jeopardy is violated, the conviction for the lesser offense should be vacated).

## III.   CONCLUSION

**{44}** For the foregoing reasons, we remand to the district with instructions to vacate Defendant's conviction for the lesser offense, either kidnaping or CSP II. We affirm the district court's judgment in all other respects.

**{45}** **IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____
**LINDA M. VANZI, Judge**

_____
**TIMOTHY L. GARCIA, Judge**

**Topic Index for _State v. Montoya_, Docket No. 28,881**

| | |
|---|---|
| **CT** | **CONSTITUTIONAL LAW** |
| CT-DJ | Double Jeopardy |
| CT-ST | Speedy Trial |
| CT-TJ | Trial by Jury |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-BG | Burglary |
| CL-CP | Criminal Sexual Penetration |
| CL-KP | Kidnaping |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-IT | Interpreter |
| CA-RD | Right to Speedy Trial |
| CA-RJ | Right to Trial by Jury |
| CA-SP | Speedy Trial |
| | |
| **ST** | **STATUTES** |
| ST-LI | Legislative Intent |