This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                    **No. A-1-CA-35233**

**LEONARD CALVILLO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Fernando R. Macias, District Judge**

Hector H. Balderas, Attorney General
Eran Sharon, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}**     Defendant was arrested after he and three friends violently forced their way into the home of Joseph Torrez on New Year's Eve, 2013, where they ransacked the house and attacked Joseph. On appeal, Defendant claims that (1) his convictions for aggravated burglary and attempted aggravated battery violate his right to be free from double jeopardy; (2) the jury was improperly instructed on child abuse by endangerment; (3) there was insufficient evidence to convict him of child abuse by endangerment; and (4) the trial judge violated his rights under the confrontation clause under U.S. Const. amends. VI, XIV and N.M. Const. art. II, §§ 14, 18. Because we agree with Defendant on his first two claims of error, we reverse and remand for a new

trial on the child endangerment charge and with further instructions to vacate the attempted aggravated battery conviction. We affirm all remaining matters.

## BACKGROUND

**{2}** Joseph Torrez, his fiancée, Natasha Munoz, their two-year-old son (Child), and two friends were at Joseph's house celebrating New Year's Eve in 2013. Natasha's sister joined them after leaving another party where she had been attacked by a couple of girls. Natasha, upset about what had happened to her sister, used Joseph's phone to call the girls at the other party and argued with them. A short time later, Defendant, who had been at the other party, called Joseph; the men argued, insulted each other, and escalated their threats to fight. During the conversation, Defendant threatened to kill Joseph and his family. Joseph told Defendant that they could handle their disagreement later and stated that his son was home.

**{3}** Soon thereafter, Defendant and three other men arrived at Joseph's house. Joseph saw Defendant throw a potted plant through his son's bedroom window, shattering the glass where Child was sleeping. Defendant and his friends then broke the glass screen door and tried to enter the house. Although Joseph and Natasha tried to hold the front door shut, one of the men kicked the door in and all four eventually pushed their way inside the house. Two of the men ran after Joseph while Defendant flipped over couches, knocked everything off the walls, yelled obscenities, and threatened to kill Joseph and his son. One of Joseph's friends called 911 and Natasha's sister took Child to a closet to hide.

**{4}** Defendant grabbed a knife from the kitchen and while his friends kicked and punched Joseph, Defendant attempted to stab him. Joseph, an experienced mixed martial arts fighter, was able to protect himself and eventually fought off his attackers, although he sustained several injuries during the confrontation. Defendant and his friends fled before the police arrived.

**{5}** A jury convicted Defendant of aggravated burglary, contrary to NMSA 1978, Section 30-16-4(B) or (C) (1963), attempt to commit aggravated battery, contrary to NMSA 1978, Sections 30-28-1 (1963) (attempt) and NMSA 1978, Section 30-3-5 (1963) (aggravated battery), child abuse by endangerment, contrary to NMSA 1978, Section 30-6-1(D)(1) (2009), and criminal damage to property, contrary to NMSA 1978, Section 30-15-1 (1963).

## DISCUSSION

## I.     Child Abuse by Endangerment

## A.     Jury Instruction

**{6}** Defendant argues that the district court erred in instructing the jury on the charge of child abuse by endangerment because the given instruction was not the current

Uniform Jury Instruction (UJI) and failed to adequately convey the mens rea standard. The current instruction, UJI 14-612 NMRA (2015), was adopted effective April 3, 2015, three months before Defendant's trial on June 29, 2015. The jury received the former instruction at trial, UJI 14-604 NMRA (2000) (withdrawn April 3, 2015), without objection. Because Defendant failed to preserve this issue at trial, we review for fundamental error. *See* Rule 12-321 NMRA; *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633 (stating that unpreserved jury instruction issues are reviewed only for fundamental error). "When reviewing jury instructions for fundamental error, we apply the fundamental error standard of review to the same inquiry we perform for review for reversible error—whether the instruction or instructions would confuse or misdirect a reasonable juror due to contradiction, ambiguity, omission, or misstatement." *State v. Gee*, 2004-NMCA-042, ¶ 8, 135 N.M. 408, 89 P.3d 80. "For fundamental error to exist, the instruction given must differ materially from the uniform jury instruction, omit essential elements, or be so confusing and incomprehensible that a court cannot be certain that the jury found the essential elements under the facts of the case." *State v. Caldwell*, 2008-NMCA-049, ¶ 24, 143 N.M. 792, 182 P.3d 775 (internal quotation marks and citations omitted). "The rule of fundamental error applies only if there has been a miscarriage of justice, if the question of guilt is so doubtful that it would shock the conscience to permit the conviction to stand, or if substantial justice has not been done." *State v. Orosco*, 1992-NMSC-006, ¶ 12, 113 N.M. 780, 833 P.2d 1146; *see also State v. Swick*, 2012-NMSC-018, ¶ 46, 279 P.3d 747 ("[F]undamental error occurs when, because an erroneous instruction was given, a court has no way of knowing whether the conviction was or was not based on the lack of the essential element.").

**{7}**    "Child abuse by endangerment, as opposed to physical abuse of a child, is a special classification designed to address situations where an accused's conduct exposes a child to a significant risk of harm, even though the child does not suffer a physical injury." *State v. Chavez*, 2009-NMSC-035, ¶ 15, 146 N.M. 434, 211 P.3d 891 (emphasis, internal quotation marks, and citation omitted). "A third-degree felony, child abuse by endangerment occurs when an adult knowingly, intentionally, or negligently places a child 'in a situation that may endanger the child's life or health.' " *Id.* (quoting Section 30-6-1(D)-(E)). The statute defines the term "negligently," stating that " 'negligently' refers to criminal negligence and means that a person knew or should have known of the danger involved and acted with a reckless disregard for the safety or health of the child." Section 30-6-1(A)(3).

**{8}**    Our Supreme Court observed that our courts have struggled over the years to define the mens rea standard for child abuse by endangerment, noting a particular concern for language that did not adequately differentiate criminal negligence from civil negligence. *See State v. Consaul*, 2014-NMSC-030, ¶ 28, 332 P.3d 850; *see also Santillanes v. State*, 1993-NMSC-012, ¶ 31, 115 N.M. 215, 849 P.2d 358 (stating that the Legislature did not intend a felony punishment to attach to ordinary negligent conduct). Two decades ago, in *State v. Mascareñas*, 2000-NMSC-017, ¶ 13, 129 N.M. 230, 4 P.3d 1221, the Court acknowledged that the term "knew or should have known," which is used in the statute and the UJI given in Defendant's trial to define "reckless disregard," is typically associated with a civil negligence standard. *See also Consaul*,

2014-NMSC-030, ¶ 39 ("We also share the concern expressed in our precedent over continued use of the phrase 'knew or should have known' in our jury instructions because of its close association with principles of civil negligence and ordinary care."). As a result, the Court stated, "we remain concerned that our present jury instructions do not faithfully capture the true legislative intent behind Section 30-6-1 and that they potentially contribute to jury confusion, resulting in unjust child abuse convictions." *Id*. ¶ 35. Following its holding in *Consaul*, our Supreme Court adopted a new UJI for child abuse, UJI 14-612, which clarified the mens rea standard for child abuse by endangerment and removed the term "knew or should have known" from the definition of reckless disregard.[1]

**{9}**     The instruction given at Defendant's trial, containing the very language our Supreme Court found objectionable in *Consaul*, provided

> For you to find [Defendant] guilty of child abuse which did not result in death or great bodily harm, as charged in Count 5, the state must prove . . .
>
> . . . .
>
> 2.     The defendant acted intentionally or with reckless disregard. To find that [Defendant] acted with reckless disregard, you must find that [Defendant] *knew or should have known* [D]efendant's conduct created a substantial and foreseeable risk, [D]efendant disregarded that risk and [D]efendant was wholly indifferent to the consequences of the conduct and to the welfare and safety of [Child].

*See* UJI 14-604 (2000). Defendant argues that instruction improperly permitted the jury to convict him based on mere negligence, which the Legislature did not intend to punish criminally. *See Consaul*, 2014-NMSC-030, ¶ 36 ("[T]he Legislature did not mean to punish ordinary acts of negligence when it amended the child abuse statute to require proof of recklessness."); *Santillanes*, 1993-NMSC-012, ¶ 28 ("[W]e conclude that the civil negligence standard, as applied to the child abuse statute, improperly goes beyond its intended scope and criminalizes conduct that is not morally contemptible."). We agree. By allowing the jury to consider ordinary negligence as a basis for the conviction, the instruction permitted the jury to convict Defendant for behavior that may not have been criminal. *See, e.g.*, *State v. Stampley*, 1999-NMSC-027, ¶ 48, 127 N.M. 426, 982

---

1 UJI 14-612 now defines the mens rea for child abuse by endangerment as follows:
    [The defendant] showed a reckless disregard without justification for the safety or health of [the child]. To find that [the defendant] showed a reckless disregard, you must find that [the defendant's] conduct was more than merely negligent or careless. Rather, you must find that [the defendant] caused or permitted a substantial and unjustifiable risk of serious harm to the safety or health of [the child]. A substantial and unjustifiable risk is one that any law-abiding person would recognize under similar circumstances and that would cause any law-abiding person to behave differently than [the defendant] out of concern for the safety or health of [the child].

P.2d 477 (holding that because the jury had no alternative but to rely on the jury instructions for the definition of the crime, instructions containing an erroneous definition could allow the jury to convict for a nonexistent crime); *see also State v. Magby*, 1998-NMSC-042, ¶ 15, 126 N.M. 361, 969 P.2d 965 ("[T]here [was] a distinct possibility that the jury understood the applicable negligence standard to criminalize 'careless' conduct or perhaps only 'extremely careless' conduct."), *overruled on other grounds by Mascareñas*, 2000-NMSC-017. *Consaul* made clear that the former UJI improperly defined the appropriate mens rea, thereby "potentially contribut[ing] to jury confusion, resulting in unjust child abuse convictions"—the very standard that gives rise to fundamental error. 2014-NMSC-030, ¶ 35. Because we will "not uphold a conviction if an error implicate[s] a fundamental unfairness within the system that would undermine judicial integrity if left unchecked[,]" we are required to reverse Defendant's conviction based on the deficiencies in the jury instruction. *Barber*, 2004-NMSC-019, ¶ 18 (internal quotation marks and citation omitted).

## B.    Sufficiency of the Evidence

**{10}**    Defendant also asserts that there was insufficient evidence to support his conviction of child abuse by endangerment. "By addressing [a defendant's] claim of insufficient evidence and determining that retrial is permissible, we ensure that no double jeopardy concerns are implicated." *Mascareñas*, 2000-NMSC-017, ¶ 31; *see also State v. Rosaire*, 1996-NMCA-115, ¶ 20, 123 N.M. 250, 939 P.2d 597 ("[O]ur review of the sufficiency of the evidence is analytically independent from the issue of the defect in the jury instruction[.]"), *aff'd*, 1997-NMSC-034, 123 N.M. 701, 945 P.2d 66.

**{11}**    "To determine whether the evidence presented was sufficient to sustain the verdict, we must decide whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Brietag*, 1989-NMCA-019, ¶ 9, 108 N.M. 368, 772 P.2d 898. We view the evidence in the light most favorable to the verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict. *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. The jury is free to reject Defendant's version of the facts, *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829, and we do not consider the merit of evidence that may have supported a different result. *State v. Kersey*, 1995-NMSC-054. ¶ 11, 120 N.M. 517, 903 P.2d 828.

**{12}**    For the jury to convict Defendant, it had to find that that Defendant caused Child to be placed in a situation that endangered the life or health of Child, and that Defendant acted intentionally or with reckless disregard. Section 30-6-1(D)(1). The evidence adduced at trial established that Defendant threw a potted plant through Child's bedroom window, where Child was sleeping. Before Defendant broke into the home, he threatened to kill Child and his father and was aware that Child was somewhere in the home. Defendant argues that he was unaware that Child was in the room before he threw the pot through the window.

**{13}** A reasonable jury, however, may consider Defendant's act of throwing the pot through the window as placing Child within the zone of danger. *See State v. Gonzales*, 2011-NMCA-081, ¶ 25, 150 N.M. 494, 263 P.3d 271 ("[T]he crime is committed when a defendant places a child within the zone of danger and physically close to an inherently dangerous situation." (internal quotation marks and citation omitted)), *aff'd on other grounds*, 2013-NMSC-016, ¶ 25, 301 P.3d 380; *see also State v. Trujillo*, 2002-NMCA-100, ¶ 20, 132 N.M. 649, 53 P.3d 909 ("[T]here may be instances when the risk of emotional harm from a similar incident might be sufficient to support a conviction based on endangerment."). Likewise, the State presented evidence that Defendant knew that Child was in the home, and we conclude that reasonable minds could find that Defendant had the requisite intent necessary to support a conviction. *State v. Ramirez*, 2018-NMSC-003, ¶ 17, 409 P.3d 902 (affirming the defendant's conviction for child endangerment when the defendant fired multiple shots into a vehicle with children sitting in the back seat). Viewing the evidence in the light most favorable to the verdict, the evidence is enough that a rational juror could have found beyond a reasonable doubt the essential facts required for conviction. Therefore, retrial is permissible.

## II. Double Jeopardy

**{14}** Defendant argues that his convictions for aggravated burglary and attempted aggravated battery violate his right to be free from double jeopardy. "A double jeopardy challenge is a constitutional question of law which we review de novo." *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747 (citing *State v. Gallegos*, 2011-NMSC-027, ¶ 51, 149 N.M. 704, 254 P.3d 655). There are two classifications of double jeopardy cases: double-description cases and unit-of-prosecution cases. *Id.* This case is a double-description case, as Defendant was "charged with violations of multiple statutes that may or may not be deemed the same offense for double jeopardy purposes." *Swafford v. State*, 1991-NMSC-043, ¶ 9, 112 N.M. 3, 810 P.2d 1223.

**{15}** "Double-description claims are subject to the two-part test set forth in *Swafford*[.]" *Swick*, 2012-NMSC-018, ¶ 11. The first step requires us to determine whether the conduct involved was unitary, and the second step "focuses on the statutes at issue to determine whether the [L]egislature intended to create separately punishable offenses." *Swafford*, 1991-NMSC-043, ¶ 25. "Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment in the same trial." *Id.*

## A. Unitary Conduct

**{16}** " 'The proper analytical framework for determining unitary conduct is whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses.' " *State v. Dominguez*, 2014-NMCA-064, ¶ 12, 327 P.3d 1092 (alteration omitted) (quoting *State v. Franco*, 2005-NMSC-013, ¶ 7, 137 N.M. 447, 112 P.3d 1104). "[T]he task is merely to determine whether the conduct for which there are multiple charges is . . . distinguishable." *Swafford*, 1991-NMSC-043, ¶ 28. "[W]e consider whether Defendant's acts are

separated by sufficient 'indicia of distinctness.' " *State v. DeGraff*, 2006-NMSC-011, ¶ 27, 139 N.M. 211, 131 P.3d 61. "The court may consider as 'indicia of distinctness' the separation of time or physical distance between the illegal acts, 'the quality and nature' of the individual acts, and the objectives and results of each act." *State v. Mora*, 2003-NMCA-072, ¶ 18, 133 N.M. 746, 69 P.3d 256 (internal quotation marks and citations omitted).

**{17}**  In order to convict Defendant of attempted aggravated battery, the jury had to find that Defendant "began to do an act which constituted a substantial part of the aggravated battery with a deadly weapon but failed to commit the aggravated battery with a deadly weapon." In order to convict Defendant of aggravated burglary in this case, the jury was required to find that Defendant "entered the dwelling with the intent to commit first degree murder by a deliberate killing or aggravated battery with a deadly weapon once inside" and that Defendant "became armed with a knife after entering or touched or applied force to Joseph Torrez in a rude or angry manner while inside." Defendant argues that the same act of becoming armed with a knife was used to form the basis for both his attempted aggravated battery and aggravated burglary convictions.

**{18}**  In evaluating whether the conduct that formed the basis for both charges is unitary, we look at whether one crime is completed before another and also whether "the conviction is supported by at least two distinct acts or forces, one which completes the first crime and another which is used in conjunction with the subsequent crime." *State v. Montoya*, 2011-NMCA-074, ¶ 31, 150 N.M. 415, 259 P.3d 820 (internal quotation marks and citation omitted). The aggravated burglary in this case was not complete until Defendant did some further act once inside the home, and the aggravated burglary instruction provided two alternative acts for the jury to consider: (1) that Defendant armed himself with a knife upon entering, or (2) that he touched or applied force to Joseph Torrez in a rude or angry manner—i.e., that Defendant committed battery. *See* NMSA 1978, § 30-3-4 (1963) ("Battery is the unlawful, intentional touching or application of force to the person of another, when done in a rude, insolent or angry manner."); *compare State v. Luna*, 1982-NMCA-150, ¶ 12, 99 N.M. 76, 653 P.2d 1222 (holding that Section 30-16-4(B) is violated "by a person who in the commission of a burglary becomes armed with an unloaded firearm), *with State v. Office of Public Defender ex rel. Muqqddin*, 2012-NMSC-029, ¶ 60, 285 P.3d 622 (stating that simple burglary is complete upon entry). Under the first alternative, the same conduct—Defendant's act of arming himself with a knife—formed the factual basis for the burglary charge and the "overt act" in furtherance of the attempted aggravated battery charge, evidenced by the State's argument that "[w]e know he [intended to commit aggravated battery] because he picked up that knife and tried to stab Joseph Torrez with it."

**{19}**  The jury's verdict does not indicate whether it found that the aggravated burglary was accomplished by Defendant's act of arming himself with a deadly weapon after entering or by committing a battery, and therefore, we do not know which of the alternatives Defendant's aggravated burglary conviction was based upon. "Under these

circumstances, we will presume that the conduct underlying Defendant's convictions . . . 'was based on a theory that potentially violated Defendant's double jeopardy rights.' " *State v. Crain*, 1997-NMCA-101, ¶ 22, 124 N.M. 84, 946 P.2d 1095; *State v. Rodriguez*, 1992-NMCA-035, ¶ 14, 113 N.M. 767, 833 P.2d 244 (stating that when a crime is presented to a jury in alternative and an appellate court cannot tell if the jury found constitutional or unconstitutional alternative, the conviction must be set aside). Because one of the alternative bases for aggravated burglary in this case was the act of becoming armed with a knife once inside, and the State relied on that evidence to establish both crimes, we hold that the conduct is unitary. *See Swick*, 2012-NMSC-018, ¶ 27, 279 P.3d 747 (holding that a double jeopardy violation occurred when the State's theory of the case relied on the same facts to support convictions for aggravated battery and attempted murder).

## B.    Legislative Intent

**{20}**    "Having determined that the conduct was unitary, we turn to the second prong of our inquiry under a double-description analysis, which is to determine if the Legislature intended for the unitary conduct to be punished as separate offenses." *Montoya*, 2011-NMCA-074, ¶ 40. "When, as here, the statutes themselves do not expressly provide for multiple punishments, we begin by applying the rule of statutory construction from *Blockburger v. United States*, 284 U.S. 299 . . . (1932), to determine whether each provision requires proof of a fact that the other does not." *State v. Branch*, 2018-NMCA-031, ¶ 24, 417 P.3d 1141. If all elements of one statute are "subsumed within the other, then the analysis ends and the statutes are considered the same for double jeopardy purposes." *State v. Silvas*, 2015-NMSC-006, ¶ 12, 343 P.3d 616. "When applying the *Blockburger* test to offenses that may be charged in alternate ways, we focus our inquiry on the elements of the statute as they were presented in the jury instructions." *Montoya*, 2011-NMCA-074, ¶ 41; *see also Swick*, 2012-NMSC-018, ¶ 21 ("[O]ur courts must evaluate legislative intent [under the modified *Blockburger* analysis] by considering the State's legal theory independent of the particular facts of the case[.] Our courts may do this by examining the charging documents and the jury instructions given in the case.").

**{21}**    Turning now to the jury instructions to evaluate the State's legal theory in this case, the jury was instructed on the elements of attempted aggravated battery as follows:

> 1.    [D]efendant intended to commit the crime of aggravated battery with a deadly weapon;
>
> 2.    [D]efendant began to do an act which constituted a substantial part of the aggravated battery with a deadly weapon but failed to commit the aggravated battery with a deadly weapon;
>
> 3.    This happened in New Mexico on or about the 1st day of January, 2014.

Comparatively, the jury was instructed on the elements of aggravated burglary as follows:

1.     [D]efendant entered a dwelling without authorization;

2.     [D]efendant entered the dwelling with the intent to commit first degree murder by a deliberate killing or aggravated battery with a deadly weapon once inside;

3.     [D]efendant became armed with a knife after entering or touched or applied force to Joseph Torrez in a rude or angry manner while inside;

4.     This happened in New Mexico on or about the 1st day of January, 2014.

Although the language is not identical, elements 1, 2, and 3 of attempted aggravated battery are substantively identical to elements 2, 3, and 4 of aggravated burglary. Both instructions require the same intent to commit aggravated battery, and the same act—becoming armed with a knife—forms a basis to convict for both crimes in this case. "Our reading of the instructions is confirmed when we look to how the prosecutor asked the jury to apply these instructions." *Silvas*, 2015-NMSC-006, ¶ 19. The prosecutor stated in closing,

[For count three, aggravated burglary] the defendant became armed with a knife . . . . He picked up a knife in the kitchen as they were fighting with Joe Torrez . . . .

Count four . . . attempt to commit aggravated battery with a deadly weapon. The State has to prove that the defendant intended to commit the crime of aggravated battery with a deadly weapon. We know he did because he picked up that knife and tried to stab Joseph Torres with it."

**{22}**    Because the State's legal theory for both crimes rested upon Defendant's unitary conduct and the charges require the same mens rea, we conclude that the attempted aggravated battery charge is subsumed by the aggravated burglary charge. Thus, convictions of both offenses violated Defendant's right to be free from double jeopardy. This does not mean that a defendant could never be punished for both aggravated burglary and attempted aggravated battery. As we said in *Montoya*, "[h]ad the jury in this case been instructed only on a theory based on non-unitary conduct," both convictions may have been upheld. 2011-NMCA-074, ¶ 43 (stating that convictions for second-degree criminal sexual penetration and kidnapping may have been upheld if the jury had been instructed on a theory based on non-unitary conduct). Accordingly, we remand to the district court with instructions to vacate Defendant's conviction for attempted aggravated battery. *Id.* (stating that "if double jeopardy is violated, the conviction for the lesser offense should be vacated").

## III. Confrontation Clause

**{23}** Defendant argues that the district court violated his constitutional right to confront the witnesses against him by (1) failing to allow him to impeach a witness's credibility with her prior felony conviction, and (2) by failing to grant his motion to exclude witnesses. *See* U.S. Const. amends. VI, XIV; N.M. Const. art. II, §§ 14, 18.

### A. Prior Felony Convictions

**{24}** Defendant argues that the district court erred by excluding evidence of Natasha Munoz's prior conviction for breaking and entering. Defendant asserts that this conviction was relevant to her credibility and that he should have been allowed to use the conviction to impeach her. After reviewing the briefs and the record, however, it appears that Defendant raised no objection to the district court's rulings and therefore failed to preserve this issue for appeal.

**{25}** Before trial commenced, the district court discussed preliminary matters with counsel in chambers, on the record. In response to the district court's questions about the final list of witnesses, the prosecutor indicated that if Defendant testified, the State would seek to impeach his credibility with his prior felony convictions. In response, defense counsel stated that he would seek to impeach Natasha Munoz with her conviction for breaking and entering. The following exchange occurred:

| | |
|---|---|
| Prosecutor: | Your Honor, if the defendant decides to testify, the State will seek to impeach his credibility with a prior felony conviction. |
| | . . . . |
| | I would seek to use those for impeachment purposes. However, I would just ask, Is it true you were convicted of—previously convicted of a felony offense in these years? I would not seek to name the offense because they don't appear to be an offense of dishonesty. |
| Court: | That's correct. And, again, [defense counsel], he's giving notice of it. |
| Defense: | I've had notice, Judge. I received copies of the judgments. While we're on the subject, may I inform the Court of a similar situation on the defense, or do you want me to wait till we get to my side, Judge? |
| Court: | No, go ahead. |

| | |
|---|---|
| Defense: | One of the witnesses the State is intending to call by the name of Natasha Munoz, Judge, I will also be seeking to impeach her by way of a conviction for breaking and entering. |
| Court: | And the conviction occurred when? |
| Defense: | The conviction occurred, I believe, in 2013. |
| Court: | And, again, the Court would place the same limitations, that you can ask if she has a prior felony conviction. |
| Defense: | Not as to what it was, Judge? |
| Court: | No, not as to what it is, because I don't necessarily consider that – [Interruption] |
| Defense: | Judge, may I continue? Natasha Munoz, I also understand her probation was previously revoked and reinstated, Judge. Will the court allow me to go into those matters as to her prior conviction? |
| Court: | When you say go into it, I don't have any problems with you asking whether she has violated the terms of her probation. And if you can—again, in good faith because you know that that's occurred or you have something that substantiates it. I'm not going to let you get into the individual items that were the basis for it unless you can show some greater relevance. |
| Defense: | Okay. |

**{26}** When Ms. Munoz testified later in the trial, defense counsel asked her whether she was convicted of a felony in New Mexico on November 22, 2013, and placed on two years' probation, to which she responded, "yes." Defense counsel also asked whether her probation was violated and revoked, to which she also responded, "yes." Defendant does not point to anything in the record showing that he objected to the initial pre-trial ruling on the scope of the impeachment or sought a further ruling from the court at trial to introduce the nature of Ms. Munoz's prior felony conviction. Consequently, we conclude that Defendant failed to preserve this claim of error for appeal and decline further review of this issue. *State v. Lucero*, 1993-NMSC-064, ¶ 11, 116 N.M. 450, 863 P.2d 1071 (stating that a defendant must obtain a clear ruling from the district court in order to preserve the grounds alleged to have been in error).

**B. Motion to Exclude**

**{27}** Defendant also argues that the district court erred in denying his motion to strike prosecution witnesses. Leading up to the June 29, 2015 trial setting, the Defendant had not interviewed four of the State's witnesses. On June 25, 2015, Defendant filed a motion to strike the witnesses, arguing that the State was at fault for the delay. The State filed a response to the motion to strike the following day, and the parties completed all four witness interviews that afternoon over the course of four hours. Defense counsel tape-recorded the interviews. On Monday, June 29, 2015, the district court heard the motion to strike as part of the preliminary matters before commencing trial that morning. Defense counsel argued that the timing of the interviews was prejudicial because it had taken valuable trial preparation time, and that he did not have time to prepare written transcripts of the interviews to use for impeachment during trial. However, he conceded that the witnesses provided favorable testimony for the defense and that he did not actually want to exclude them, stating that "the remedy is not to strike the witnesses. The remedy is to continue the trial so that I can get these transcriptions." In response, the State pointed out that Defendant had not transcribed other witnesses interviews conducted months earlier and that the defense had the audio recordings of the interviews available to use at trial, if necessary. The district court denied the motion to strike and Defendant's oral motion for a continuance.

**{28}** Because Defendant abandoned his request for witness exclusion at the hearing, we limit our review to the district court's decision to deny Defendant's oral motion for a continuance. "The grant or denial of a continuance is within the sound discretion of the district court, and the burden of establishing abuse of discretion rests with the defendant." *State v. Salazar*, 2007-NMSC-004, ¶ 10, 141 N.M. 148, 152 P.3d 135. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Rojo*, 1999-NMSC-001, ¶ 41 (internal quotation marks and citation omitted). In *Salazar*, our Supreme Court stated that

> In the context of a continuance requested for the purpose of obtaining a witness's testimony, these factors serve to balance a criminal defendant's constitutional right to compulsory process, U.S. Const. amends. VI, XIV, with the court's interest in controlling its docket and the public's interest in the efficient administration of justice without unnecessary delay.

2007-NMSC-004, ¶ 15 (internal quotation marks and citation omitted). In addition, "[The d]efendant must show that the denial of the continuance prejudiced him." *Id.* ¶ 16. "No more prejudice need be shown than that the [district] court's order may have made a potential avenue of defense unavailable to the defendant." *Id.* (internal quotation marks and citation omitted).

**{29}** In this case, Defendant obtained the witness testimony prior to trial and had audio recordings available for impeachment. He argues that because he lacked

transcripts, he was unable to contradict vague testimony given by one of the State's witnesses, who Defendant claims had given more specific testimony in her interview days earlier. Defendant does not argue why he was not able to use his recordings of the interviews for that purpose at trial or that he that he attempted to do so. Nor does Defendant present to us the specific testimony he claims would have been material to his defense. Without any specific evidence on these matters, Defendant has failed to meet his burden to establish that an avenue of defense was foreclosed to him, and affirm the district court's denial of Defendant's motion to strike and oral motion for continuance.

**CONCLUSION**

**{30}** For the foregoing reasons, we reverse Defendant's conviction for child abuse by endangerment and remand to the district court for retrial on that charge, and with further instructions to vacate Defendant's conviction for attempted aggravated battery. We affirm the district court's judgment in all other respects.

**{31}   IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**MICHAEL D. BUSTAMANTE, Judge Pro Tempore**